GIBSON, DUNN & CRUTCHER LLP
JAMES P. FOGELMAN, SBN 161584
jfogelman@gibsondunn.com
ALAYNA MONROE, SBN 329061
amonroe@gibsondunn.com
2029 Century Park East, Ste. 4000
Los Angeles, CA 90067
Telephone: 310.552.8500
Facsimile: 310.551.8741

KATHERINE V.A SMITH, SBN 247866
ksmith@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Tel.: 213.229.7000
Fac.: 213.229.7520

*Attorneys for Defendant DraftKings, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Michael Z. Hermalyn and FVP, LLC,<br><br>  Plaintiffs,<br><br>  v.<br><br>DraftKings, Inc.<br><br>  Defendant. | CASE NO. 2:24-cv-997<br><br>**DEFENDANT'S NOTICE OF REMOVAL**<br><br>[Removal from the Superior Court of the State of California, Los Angeles County, Case No. 24STCV02694]<br><br>Action Filed:  February 5, 2024<br>Trial Date:    None Set |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................5

II.    RELEVANT ALLEGATIONS AND FACTUAL BACKGROUND .................9

    A.    Hermalyn Schemes to Defect to Fanatics and Create a False California Residency to Escape His Contractual Obligations to DraftKings....................................................................................9

    B.    Hermalyn and "FVP, LLC" File Suit in California State Court ............. 11

    C.    DraftKings Uncovers Plaintiffs' Extensive Fraud Designed in an Attempt to Defeat Federal Jurisdiction ..................................... 13

    D.    The Case Is Remanded and Now Re-Removed ...................................... 16

III.   TIMELINESS OF REMOVAL .......................................................... 16

IV.    GROUNDS FOR REMOVAL ........................................................... 17

    A.    This Second Removal Is Permissible......................................... 18

    B.    The Court Has Diversity Jurisdiction........................................ 18

        1.    The Domicile of Sham Company FVP, LLC Should Be Disregarded ............................................................... 18

        2.    There is Complete Diversity of Citizenship Between Hermalyn and DraftKings..................................... 20

        3.    The Amount in Controversy Exceeds $75,000............................ 21

V.     THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER ........... 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Abrego Abrego v. Dow Chem. Co.*,
443 F.3d 676 (9th Cir. 2006) .................................................................................. 18

*Att'ys Tr. v. Videotape Comput. Prod.*,
93 F.3d 593 (9th Cir. 1996) ................................................................................ 8, 18

*Ayala v. Cox Auto., Inc.*,
2016 WL 6561284 (C.D. Cal. Nov. 4, 2016) ................................................... 20, 21

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81 (2014) ................................................................................................. 22

*Dielsi v. Falk*,
916 F. Supp. 985 (C.D. Cal. 1996) ......................................................................... 21

*In re Ford Motor Co./Citibank (S. Dakota), N.A.*,
264 F.3d 952 (9th Cir. 2001) .................................................................................. 22

*Gonzales v. CarMax Auto Superstores, LLC*,
840 F.3d 644 (9th Cir. 2016) .................................................................................. 22

*Grancare, LLC v. Thrower ex rel. Mills*,
889 F.3d 543 (9th Cir. 2018) .................................................................................. 18

*Johnson v. Columbia Props. Anchorage, LP*,
437 F.3d 894 (9th Cir. 2006) .................................................................................. 21

*Kanter v. Warner-Lambert Co.*,
265 F.3d 853 (9th Cir. 2001) .................................................................................. 21

*Kantor v. Wellesley Galleries, Ltd.*,
704 F.2d 1088 (9th Cir. 1983) ................................................................................ 20

*Lewis v. Verizon Commc'ns, Inc.*,
627 F.3d 395 (9th Cir. 2010) ............................................................................ 17, 22

*Mattel, Inc. v. Bryant*,
441 F. Supp. 2d 1081 (C.D. Cal. 2005), *aff'd,* 446 F.3d 1011 (9th Cir.
2006) ................................................................................................................... 5, 18

*Overrated Prods., Inc. v. Universal Music Grp.*,
No. CV 19-2899-RSWL-RAO, 2019 WL 6729718 (C.D. Cal. July 31,
2019) ................................................................................................. 5, 8, 18, 20

*Patel v. Nike Retail Servs., Inc.*,
58 F. Supp. 3d 1032 (N.D. Cal. 2014) .................................................................... 21

*Ridder Bros., Inc. v. Blethen*,
142 F.2d 395 (9th Cir. 1944) .................................................................................. 22

*Rojas ex rel Rojas v. Sea World Parks & Ent., Inc.*,
538 F. Supp. 3d 1008 (S.D. Cal. 2021) .................................................................. 18

Gibson, Dunn &
Crutcher LLP

*Sanchez v. Monumental Life Ins. Co.*,
    102 F.3d 398 (9th Cir. 1996) ...................................................................... 21

*State Farm Mut. Auto. Ins. Co. v. Dyer*,
    19 F.3d 514 (10th Cir. 1994) ...................................................................... 20

*Theis Research, Inc. v. Brown & Bain*,
    400 F.3d 659 (9th Cir. 2005) ...................................................................... 22

*Valencia v. Sharp Elecs. Corp.*,
    561 F. App'x 591 (9th Cir. 2014) ......................................................... 9, 20

*Yokeno v. Mafnas*,
    973 F.2d 803 (9th Cir. 1992) ...................................................................... 20

## Statutes

28 U.S.C. §84(c) ............................................................................................... 23

28 U.S.C. §1331 ................................................................................................. 5

28 U.S.C. §1332 ...................................................................... 5, 16, 20, 21, 23

28 U.S.C. §1441 .......................................................................................... 5, 23

28 U.S.C. §1446(b) ..................................................................................... 16, 17

28 U.S.C. §1446(c)(2)(B) ................................................................................ 21

28 U.S.C. §1446(d) .......................................................................................... 23

Cal. Bus. & Prof. Code §16600.5 .................................................................... 11

Cal. Bus. & Prof. Code §17200 ....................................................................... 11

Cal. Code Civ. Proc. §1060 ............................................................................. 11

**TO THE CLERK OF THE ABOVE-TITLED COURT, PARTIES, AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446, Defendant DraftKings, Inc. ("DraftKings") hereby removes to the United States District Court for the Central District of California the above-captioned state court action, originally filed as Case No. 24STCV02694 in Los Angeles County Superior Court, State of California.  Removal is proper on the following grounds.

## I.    INTRODUCTION

1.    DraftKings is conscious of the fact that this case was already remanded to state court once, and it does not approach re-removal lightly.  However, in the few days since it filed its first notice of removal with this Court, critical information has come to DraftKings' attention that requires this filing, and forms the basis of federal diversity jurisdiction on new grounds—under the fraudulent joinder doctrine.  *See Mattel, Inc. v. Bryant*, 441 F. Supp. 2d 1081, 1089 (C.D. Cal. 2005), *aff'd,* 446 F.3d 1011 (9th Cir. 2006) (new evidence permitted the filing of a second notice of removal); *Overrated Prods., Inc. v. Universal Music Grp.*, No. CV 19-2899-RSWL-RAO, 2019 WL 6729718, at *7 (C.D. Cal. July 31, 2019) (successive removal was proper where the initial remand "was based on the record lacking key information.  Had it been present, the Court would have deemed [the non-diverse plaintiff] a sham").

2.    Until February 1, 2024, Plaintiff Michael Hermalyn served as Senior Vice President of Growth at DraftKings, one of the leading digital sports, entertainment, and gaming companies in the world.  Hermalyn worked out of his New Jersey home, sometimes traveling into DraftKings' New York office.  Last Thursday, Hermalyn abruptly resigned from DraftKings to work for its competitor, Fanatics, in its Los Angeles office.  The same day, Hermalyn and FVP, LLC—an alleged "affiliate" of the global digital sports platform Fanatics Holdings, Inc. ("Fanatics")—filed an action in Los Angeles Superior Court, claiming to seek "emergency" relief under California law and asking to void Hermalyn's noncompete agreements and forum selection clauses,

which require adjudication of all disputes in Boston, Massachusetts.   DraftKings removed the case to federal court that night, based upon apparent diversity between the parties.  On Friday, Plaintiffs moved to remand the case on an *ex parte* basis, and the Court granted remand on its own motion on Monday morning, citing Plaintiffs' representation that Plaintiff FVP, LLC, a California LLC, has one member, a Nevada corporation named FVP, Inc.  This, the Court observed, destroys complete diversity because DraftKings is also registered in Nevada.

3.      But Plaintiffs failed to disclose to this Court the full history and context of this corporate structure.  FVP, LLC, which purportedly employs Hermalyn, was formed a mere **one day** before they filed their lawsuit in state court.  And according to the Declaration of Fanatics' Chief Legal Officer, Gregg Winiarski—which DraftKings received for the first time the day after it filed its first removal—FVP, LLC has just one member: FVP, Inc., incorporated in Nevada.  With this new information, DraftKings was able to discover that FVP, Inc. was also formed **one day** before this lawsuit was filed, with only one officer: the Chief Financial Officer of Fanatics, Inc.  Then, in the Notice of Interested Parties filed by Plaintiffs on February 4, DraftKings learned that FVP. Inc., in turn, is fully owned by Fanatics.  In short, ***FVC, LLC and FVC, Inc. are sham companies owned and directed in all ways by Fanatics itself, formed one day before this lawsuit was filed*** for one purpose and one purpose only—to improperly forum shop by trying to destroy complete diversity with DraftKings.  They were formed literally at the last minute in an attempt to allow Hermalyn and Fanatics, the real parties in interest and parties diverse from DraftKings, to sue in state court.

4.      There is no other way to describe this than ***an attempted fraud on the Court***.

5.      This attempted fraud unfortunately is not surprising.  Hermalyn resigned just 10 days before Super Bowl LVIII, one of the most significant gaming events in the world, and immediately started with DraftKings' competitor, Fanatics, that same day. This followed months of disloyalty to DraftKings and misuse of its funds.  And on his

way out the door, Hermalyn downloaded and viewed trade secrets and other highly sensitive confidential information to use in his new competitive role.

6.     Perhaps the most dramatic evidence of Hermalyn's brazen disregard of his legal obligations and intent to injure DraftKings occurred in the few days before his resignation.  Hermalyn was notably absent in the critical days leading up to the Super Bowl, claiming to be out on leave due to the death of a friend.  But according to geolocation information traced to his company-issued email account accessed on his cell phone, Hermalyn covertly traveled to Fanatics' offices in California instead.  During this visit, Hermalyn downloaded a commercially sensitive document, the "(Master) SB 2024" spreadsheet.  This spreadsheet contains a compilation of DraftKings' Super Bowl plans for entertaining their key partners, including representatives of teams and leagues, as well as athletes, celebrities, influencers, vendors, and corporate officers and directors who are critical to DraftKings' business development efforts to recruit and retain VIP customers.  In addition to identifying these business partners, the spreadsheet lists the corresponding DraftKings employees who maintain relationships with each business partner and would serve as their point of contact at the Super Bowl—information that would be extremely valuable to a competitor seeking to enter into a similar business relationship with them.  The spreadsheet also includes information reflecting the number of VIP customers who will be attending those events and where the VIP customers will be located.

7.     Also during this three-day trip to California, which spanned January 29 to 31, 2024, Hermalyn claims to have: (1) signed a lease for an apartment in Los Angeles (location, size, duration of lease unknown), (2) obtained a California driver's license, (3) purchased a car registered in California, (4) registered to vote in California, (5) obtained an appointment with a physician in California, and (6) contacted summer camps and "joined waitlists."  Then on February 1, he filed suit in California state court claiming to be "a California resident" who could not possibly be held to his contractual

non-competition obligations and Massachusetts forum-selection and choice of law clauses.

8.      In short, what Hermalyn would have this Court believe is that anyone with funding from a new employer, or just some spare cash and a phone, can become a California resident in less time than the average trip to Disneyland.  And any party can defeat diversity jurisdiction by forming a sham LLC with a non-diverse member just one day before filing in state court.  Indeed, it appears Fanatics and Hermalyn attempted to reverse engineer their way into California state court in obvious forum shopping:  to avail himself of California law, Hermalyn would have to be a California resident, and to remain in state court, they would need a Nevada plaintiff.  And so, ***in less than one week***, they strung together a record purporting to establish Hermalyn's California residency and employment by an LLC with a Nevada member.

9.      Fortunately, courts are not so easily fooled.  The law is clear that courts need not "countenance destruction of jurisdiction by the use of straw parties," particularly where the result would deprive a party of the "forum to which [it] would otherwise be entitled" and the "jurisdiction which Congress conferred upon the federal courts [would be] manipulated."  *Att'ys Tr. v. Videotape Comput. Prod*., 93 F.3d 593, 598 (9th Cir. 1996).  And FVP, LLC is exactly that—a straw party, a legal fiction, designed solely in an attempt to allow Fanatics and Hermalyn to file a state court lawsuit.  As such, FVP, LLC's domicile is irrelevant to the diversity analysis.  *Overrated Prods. Inc.*, 2019 WL 6729718, at *7 (where evidence revealed plaintiff corporation was assigned royalty rights so it "could initiate [the] suit," the company was a "strawman" and its "domicile [wa]s irrelevant for the purpose of establishing jurisdiction").[1]

---

[1] The law will also not countenance Hermalyn's blatant forum-shopping in California. Despite his 3-day whirlwind tour of Los Angeles, he is not a California citizen—he lives and works in New Jersey, and he agreed to adjudicate his disputes in Massachusetts. Accordingly, DraftKings intends to seek a stay or transfer of this case to the agreed upon Massachusetts forum once the question of remand is resolved, if not sooner.

10.     This is the most egregious attempt to fraudulently circumvent diversity jurisdiction that counsel has ever seen.  Hermalyn and Fanatics, knowing they were completely diverse from DraftKings, created two fictional sham companies one day before filing suit to avoid federal jurisdiction.  *See Valencia v. Sharp Elecs. Corp.*, 561 F. App'x 591, 593 (9th Cir. 2014) (fraudulent joinder exists where there is "actual fraud in the pleading of jurisdictional facts").  This is extraordinary, potentially sanctionable conduct and an abuse of the judicial system.

## II.     RELEVANT ALLEGATIONS AND FACTUAL BACKGROUND

11.     DraftKings is a leader in the fiercely competitive digital sports entertainment and gaming industry, best known for fantasy sports, mobile sports betting, and iGaming products.  In this industry, businesses sink or swim on the strength of their customer relationships.   DraftKings is one of only a few prominent companies competing for extremely scarce resources, most notably the patronage of a relatively small number of high-net worth customers who wager significant sums on sporting events.  Fanatics, Inc. is a competitor of DraftKings.

**A.     Hermalyn Schemes to Defect to Fanatics and Create a False California Residency to Escape His Contractual Obligations to DraftKings**

12.     From approximately September 14, 2020, until his abrupt resignation on February 1, 2024, Hermalyn was a critical employee of DraftKings who lived and worked out of his home in Bay Head, New Jersey, and at times commuted to and worked from DraftKings' New York City office.  Declaration of Katherine V.A. Smith ("Smith Decl."), Ex. A ¶ 12.

13.     During his employment at DraftKings, Hermalyn held the titles of Senior Vice President of Business Development and Senior Vice President of Growth, leading DraftKings' VIP team.  Declaration of Gregory Karamitis ("Karamitis Decl.") ¶ 5.  This team is critically important for DraftKings' success.  *Id.* ¶ 6.  The VIP team builds and maintains relationships with DraftKings' most loyal customers, recruiting and retaining the customers responsible for a significant share of DraftKings' business.  *Id.*  The

strategies and information Hermalyn learned in his role leading DraftKings' VIP team are among the most valuable information DraftKings owns: they are the secrets and confidential information that allow DraftKings to attract and retain the most important and loyal customers across all DraftKings products. *Id.* ¶ 7. And correspondingly, the strategies and information to which Hermalyn had access are some of the most valuable information any competitor—like Fanatics—could hope to steal. *Id.* Accordingly, throughout his employment with DraftKings, Hermalyn was offered the opportunity on multiple occasions to receive valuable equity in the company in exchange for his agreement to abide by a series of agreements containing post-employment restrictive covenants, as well as a Nonsolicitation, Nondisclosure & Assignment of Inventions Agreement (collectively the "Noncompetition Covenants"). *Id.* ¶ 8. Hermalyn repeatedly accepted this bargain, and has received millions in DraftKings equity in exchange for his agreement to abide by the Noncompetition Covenants. *Id.* ¶ 5.

14.    Despite his numerous contractual obligations to DraftKings, the unique position of trust he held, and the significant compensation he had been paid—on information and belief, Hermalyn began a surreptitious campaign to betray and damage DraftKings. He carefully timed his defection to Fanatics to occur in the days leading up to the 2024 Superbowl—the most critical, and most demanding, days in the year for any sports gambling business, and the moment when Hermalyn's defection to Fanatics could give Fanatics the most dramatic unfair advantage and cause DraftKings the most serious injury. *Id.* ¶ 9.

15.    In the week leading up to his resignation, Hermalyn told DraftKings that he needed to take time to mourn the death of a "close friend" from Pennsylvania. *Id.* ¶ 10. However, under the cover of this sympathetic excuse, Hermalyn immediately flew to Fanatics' California offices to finalize the terms under which he would defect from DraftKings and begin new employment with Fanatics in the critical days before the Super Bowl. *Id.* ¶ 9. DraftKings' data records, including geolocation information, have confirmed that while onsite at Fanatics' California office Hermalyn accessed and

downloaded DraftKings' trade secrets and other prized confidential information to a non-DraftKings' device. *Id.* ¶ 11.

16.    Hermalyn also apparently used his time in Los Angeles to lay the groundwork for his sham claim of California residency.  In the three days he claims to have spent in California, he says he (1) leased an apartment in California (for an undisclosed period of time), (2) obtained a California driver's license, (3) purchased a car that is registered in California, (3) registered to vote in California, (4) obtained an appointment with a physician in California, and (5) contacted summer camps and "joined various waitlists" for his daughters.  Smith Decl., Ex. A ¶ 2.  Despite these efforts, it is DraftKings' understanding that his home and family—and therefore residence—remain in New Jersey, where his children still attend school and his wife remains employed as a Director of Sales for Tory Burch in New York City.  At best, Hermalyn merely has an *intention* of moving to California to try to void his agreement where the law is more favorable.  At worst, his "relocation" to California is nothing more than a fraudulent front that will be quickly abandoned once any litigation is over.

**B.    Hermalyn and "FVP, LLC" File Suit in California State Court**

17.    On the morning of February 1, 2024, Hermalyn gave notice of his resignation from DraftKings, stating that he would be joining "Fanatics" as "President and the Head of the Los Angeles office."  Smith Decl., Ex. A ¶ 21.  Minutes later his counsel provided *ex parte* notice of their intent to appear the next day in Los Angeles Superior Court (LASC) seeking an injunction preventing DraftKings from enforcing the Noncompetition Covenants.  *Id.*, Ex. G at 1.

18.    In their Complaint, Plaintiffs allege three causes of action against DraftKings:  (1) Declaratory Relief (Cal. Code Civ. Proc. § 1060); (2) Injunctive Relief (Cal. Bus. & Prof. Code § 16600.5); and (3) Unfair Competition (Cal. Bus. & Prof. Code §§ 17200 *et seq.*).  Plaintiffs seek a "judicial declaration that (i) Mr. Hermalyn may freely compete against DraftKings, including by working as the President of Fanatics VIP and Head of Fanatics' Los Angeles, California office . . . ; (ii) Fanatics VIP may

continue to employ Mr. Hermalyn in this capacity; (iii) Mr. Hermalyn's post-employment restrictive covenants with DraftKings, including the noncompete, client nonsolicit and no-service, and employee nonsolicit and no-hire prohibitions, are void and unenforceable under California law and public policy . . . ; (iv) the Massachusetts choice of law and forum provisions are void and unenforceable under California law and public policy . . . ; and (v) the jury trial waiver provision is void under California law and public policy . . . ." Smith Decl., Ex. A at 25. Plaintiffs also seek an injunction "voiding the post-employment restrictive covenants and the Massachusetts law and forum provisions contained in Mr. Hermalyn's agreements with DraftKings under California law and public policy . . . and enjoining DraftKings from violating same or enforcing same in court." *Id.* at 25–26. Plaintiffs also seek damages and attorneys' fees and costs. *Id.* at 26.

19. Facing the ticking clock of an 8:30 a.m. hearing, by mid-day Thursday DraftKings had begun preparing a notice of removal. Given that DraftKings is a Nevada corporation with its headquarters in Boston, and Hermalyn is a New Jersey resident, there would plainly be complete diversity between the parties. Karamitis Decl., ¶¶ 3, 4. When DraftKings finally received the complaint Thursday at nearly 3 p.m., it learned that (1) Hermalyn was claiming to be a California resident and (2) there was also a co-Plaintiff, Hermalyn's alleged employer, FVP, LLC (even though only Hermalyn is party to the relevant agreement). Smith Decl., Ex. A ¶¶ 5, 6. As to Hermalyn, there would be diversity between him and DraftKings regardless of whether he is a New Jersey or California resident. Karamitis Decl., ¶ 3. As to FVP, LLC, DraftKings had never heard of the company, but the complaint represented that FVP, LLC was "formed in California" "with headquarters in Los Angeles," and was a "California-based affiliate" of the "global digital sports platform Fanatics Holdings, Inc.," Smith Decl., Ex. A ¶ 13,

which itself is a Delaware corporation headquartered in New York, *id.*, Ex. P ¶ 3. DraftKings removed the case that night.  *Id.*, Ex. F.[2]

## C.  DraftKings Uncovers Plaintiffs' Extensive Fraud Designed in an Attempt to Defeat Federal Jurisdiction

20.   Around noon on Friday, Hermalyn's counsel emailed DraftKings to "meet and confer" about DraftKings' removal.  "One of FVP, LLC's members is a Nevada citizen," she wrote, asking that DraftKings "stipulate to remand."  Smith Decl. Ex. K at 11. An hour later, Hermalyn's counsel wrote again, providing notice that Plaintiffs would be filing an *ex parte* application, noticed for Monday, February 5, at 9:00 a.m. before this Court, seeking to shorten time on their motion to remand, and asking again that DraftKings stipulate to remand, "given that there is no reasonable dispute regarding the lack of subject matter jurisdiction."  *Id.* at 10.

21.   These emails started a chain reaction of discoveries through which DraftKings learned that, contrary to Plaintiffs' contention that there could be "no reasonable dispute" regarding the remand, DraftKings had every reason to contest the purported lack of complete diversity among the parties.

22.   The first eyebrow-raising fact that DraftKings uncovered was about Plaintiff FVP, LLC.  Per the Articles of Organization filed with the Secretary of State,

---

[2]  The next morning, in light of Hermalyn's counsel's repeated insistence that she would be appearing in LASC at 8:30 a.m., DraftKings' counsel went to the court, if only to notify the judge of the removal.  Smith Decl., Ex. H at 1.  Hermalyn's counsel did not appear, and the clerk in Department 85 was surprised to see DraftKings' attorney, having "nothing on calendar" that day.  *Id.*  The clerk confirmed that no ex parte application or TRO had ever been filed in the case, and she had no papers—courtesy copy or otherwise—indicating that there was going to be an ex parte hearing that morning.  *Id.*

It was only late on Friday that Hermalyn's counsel admitted that the TRO and *ex parte* application had never been filed.  *Id.*, Ex. K at 5.  The filing had been rejected by the superior court because it was submitted too late—precisely as DraftKings had repeatedly warned.  *Id.*  This apparently did not stop Hermalyn's counsel from representing to this Court, however, that Hermalyn had "sought a TRO," and that DraftKings removed the case "[m]ere hours before that TRO could be heard."  *Id.*, Ex. N at 4.  Of course, the TRO would not be heard Friday morning because it was never filed and was in fact rejected from filing for being too late.

DEFENDANT'S NOTICE OF REMOVAL

Gibson, Dunn & Crutcher LLP

***Plaintiff FVP, LLC had been formed just one day before the lawsuit was filed****. Id.*, Ex. L.  DraftKings had never heard of FVP, LLC because, prior to January 31, 2024, it didn't exist.    Thus, while Plaintiffs' complaint alleged that FVP, LLC was "headquarter[ed] in Los Angeles, California" and "is a California-based affiliate of" Fanatics, and that Hermalyn "accepted his offer of employment" from FVP, LLC and "presently serves as [its] President," *id.*, Ex. A ¶¶ 13, 23, all of that had apparently happened in a 24-hour period before the complaint was filed (if it happened at all).

23.    The next, even more disturbing revelation came shortly thereafter, when Plaintiffs filed their Motion to Remand.  *Id.*, Ex. O.  The supporting Declaration of Fanatics' Chief Legal Officer, Gregg Winiarski, stated that FVP, LLC has just one member[3]:  FVP, Inc., incorporated in Nevada.  *Id.*, Ex. P ¶¶ 6, 7.  DraftKings had also never heard of FVP, Inc., so it then quickly searched the Nevada Business Portal, discovering that ***FVP, Inc. had also been formed on January 31, 2024—just one day before this lawsuit was filed.***  *Id.*, Ex. M.  The only officer of FVP, Inc. listed is Glenn Schiffman—Chief Financial Officer of Fanatics, Inc.  *Id.* ¶ 15.  And when Plaintiffs filed their Notice of Interested Parties on February 4, it was further revealed that FVP, Inc. is "wholly owned by Fanatics Holdings, Inc., a Delaware Corporation."  *Id.*, Ex. Q at 2. Putting these pieces together:  Fanatics Holdings, Inc. fully owns FVP, Inc., which is the sole member of FVP, LLC, making FVP, LLC nothing more than a sham company directed in all ways by Fanatics itself and created solely in an attempt to destroy diversity jurisdiction.

24.    In short, DraftKings has found itself smack in the middle of an elaborate and fraudulent charade.  Fanatics had been scheming for months to hire Hermalyn and bring this lawsuit in an attempt to void his contract with a forum selection clause, take advantage of more favorable California law, and avoid third-party liability for its willful interference.  But it knew that if it joined the suit with Hermalyn, or if Hermalyn filed

---

[3] Revealing that Hermalyn's counsel's prior representation that FVP, LLC had multiple "members" was yet another falsehood.  Smith Decl., Ex. K at 11.

alone, the case would be removable to federal court.  So, just ***one day before filing***, Fanatics created a Nevada company, with the Fanatics Inc. CFO as its sole officer, and then formed a California LLC, with the Nevada company as its sole member.  *Id.* ¶ 15; Exs. L, M.  The cherry on top?  Fanatics arranged for Hermalyn to be the "President" of the brand-new FVP, LLC, even though his role was to be the Head of ***Fanatics'***—not FVP, LLC's—Los Angeles office.  *Id.*, Ex. A ¶ 23.  By nominally having FVP, LLC employ Hermalyn, the sham entity could plead a purported interest in the litigation, and disguise that it is a completely fraudulent plaintiff designed solely to defeat diversity jurisdiction.[4]

25.    With this new knowledge, DraftKings re-reviewed the complaint, where it became apparent that Plaintiffs had attempted to hide their fraud through vague allegations and deliberate obfuscation.  While the complaint alleges that Hermalyn is "employed by" FVP, LLC, almost all other allegations are only about "Fanatics," confusingly defined to encompass "Fanatics Holdings, Inc. (together with its subsidiaries and affiliates, including Fanatics VIP)."  *Id.*, Ex. A ¶¶ 1, 12.  The complaint (which refers to FVP, LLC as "Fanatics VIP") uses "Fanatics VIP" and "Fanatics" almost interchangeably, apparently drafted to be intentionally opaque and confer legitimacy on "FVP, LLC"—an entity that appears to exist only on paper.  *See, e.g.*, *id.* ¶ 13 ("***Fanatics VIP*** is a California-based affiliate of the global digital sports platform Fanatics Holdings, Inc. ***Fanatics*** has had a Los Angeles office since 2022, and currently employs approximately 80 people there." (emphases added)); ¶ 26 ("***Fanatics*** hired Mr. Hermalyn for his unique skills and talents to help ***Fanatics VIP*** thrive. As Head of ***Fanatics'*** Los Angeles office, Mr. Hermalyn will oversee and administer the operations of the Los Angeles office. . ." (emphases added)).

---

[4] On Friday, DraftKings' counsel requested copies of the incorporation documents of FVP, LLC and any members, but never received them.  Smith Decl., Ex. K at 8–9.

Gibson, Dunn & Crutcher LLP

### D.   The Case Is Remanded and Now Re-Removed

26.    Plaintiffs filed their motion to remand and *ex parte* application to shorten time on that motion Friday afternoon.  Smith Decl., Exs. N–P.  Over the weekend, armed with startling new information regarding Plaintiffs' fraudulent scheme, DraftKings' counsel prepared its response to that *ex parte* application, outlining the clear case for diversity jurisdiction due to fraudulent joinder.  However, the Court remanded the case on its own motion before DraftKings was able to present this evidence in its Opposition that afternoon, as permitted under the rules.  *Id.*, Ex. R.

27.    Without the benefit of this new information, the Court found that diversity jurisdiction did not exist because Plaintiffs "offer[ed] evidence that FVP[,] [LLC]'s sole member is a citizen of Nevada," citing the Winiarski Declaration,  and "Defendant, like FVP, [LLC,] is a citizen of Nevada."  The Court then concluded "complete diversity of citizenship is lacking, 28 U.S.C. § 1332(a)."  *Id.* at 2.  Of course, what the Court did not know at the time it ruled, just as DraftKings did not know when it first removed the case, was that FVP, LLC and FVP, Inc. are not the real parties in interest and instead are mere sham companies, fully controlled by Fanatics, Inc. and designed solely to destroy federal jurisdiction.

28.    It is on the basis of this newly discovered information that DraftKings hereby re-removes the case to federal court.

### III.    TIMELINESS OF REMOVAL

29.    Plaintiffs filed their Complaint against DraftKings in Los Angeles County Superior Court, State of California, Case No. 24STCV02694, on February 1, 2024. Smith Decl., Ex. A.  Plaintiffs emailed Exhibit A to the Smith Declaration to DraftKings through its counsel on February 1, 2024.  *Id.* ¶ 2.  This Notice of Removal ("Notice") is timely because it is filed within thirty days after "receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."  *See* 28 U.S.C. § 1446(b).  It is also timely because it is filed within 30 days of the discovery of new "paper[s]" establishing

fraudulent joinder of Plaintiff FVP, LLP, and thus federal jurisdiction.   28 U.S.C. § 1446(b)(3) ("A notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is or has become removable" even "if the case stated by the initial pleading is not removable.").

## IV.     GROUNDS FOR REMOVAL

30.     As a preliminary matter, DraftKings denies that liability can be established and further maintains that this action was improperly filed in California because, among other things, Hermalyn agreed to a forum-selection clause establishing Massachusetts as the proper forum for this action.   DraftKings expressly reserves all rights to move to dismiss or transfer this action on the basis of *forum non conveniens*.   Further, DraftKings does not concede, and reserves the right to contest at the appropriate time, that any of Plaintiffs' allegations constitute a cause of action against DraftKings under applicable California law.   No statement or reference contained herein shall constitute an admission of fact or liability or a suggestion that Plaintiffs will or could actually recover any of the relief sought based upon the allegations contained in the Complaint or otherwise. DraftKings' Notice seeks only to establish that the amount in controversy is more likely than not in excess of Section 1332's jurisdictional minimum.   "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [DraftKings'] liability."  *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).  Thus, for purposes of this removal only, DraftKings assumes, where noted, that Hermalyn's allegations are true.

31.     Removal is proper pursuant to 28 U.S.C. § 1332, because there is complete diversity between Hermalyn and DraftKings, and the amount in controversy exceeds $75,000.  Under the doctrine of fraudulent joinder, the domicile of sham defendant FVP, LLC should be disregarded.  DraftKings denies Plaintiffs' factual allegations and denies that they are entitled to the relief requested.  However, based on the allegations in the Complaint and the prayer for relief, as well as the recently revealed information

Gibson, Dunn & Crutcher LLP

regarding FVP, Inc. and FVP, LLC, all requirements for federal jurisdiction have been met, and this Court accordingly has original jurisdiction over this action.

## A.      This Second Removal Is Permissible

32.      This will be the second time that DraftKings has removed this case to federal court.  But the grounds for this removal are based on information that was unknown to DraftKings at the time of its first removal due to Plaintiffs' obfuscation. Because "later-discovered facts may prompt a second attempt at removal," this removal is permissible under the law.  *Abrego Abrego v. Dow Chem. Co*., 443 F.3d 676, 691 (9th Cir. 2006); *see also Mattel, Inc.*, 441 F. Supp. 2d at 1089 (denying remand because new evidence permitted the filing of a second notice of removal); *Overrated Prods., Inc.*, 2019 WL 6729718, at *7 ("While this Action was initially remanded, the decision was based on the record lacking key information.  Had it been present, the Court would have deemed [non-diverse party] a sham.").

## B.      The Court Has Diversity Jurisdiction

### 1.      The Domicile of Sham Company FVP, LLC Should Be Disregarded

33.      "[D]istrict courts may disregard the citizenship of a non-diverse [party] who has been fraudulently joined."  *Grancare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 548 (9th Cir. 2018).  Courts need not "countenance destruction of jurisdiction by the use of straw parties," particularly where the result would deprive a party of the "forum to which [it] would otherwise be entitled" and the "jurisdiction which Congress conferred upon the federal courts [would be] manipulated."  *Att'ys Tr.,*, 93 F.3d at 598. Generally, fraudulent joinder exists where "either (1) actual fraud exists in the pleading of jurisdictional facts or (2) the plaintiff is unable to establish a cause of action against the non-diverse party in state court."  *Rojas ex rel Rojas v. Sea World Parks & Ent., Inc.*, 538 F. Supp. 3d 1008, 1024–25 (S.D. Cal. 2021).

34.      Here, Plaintiffs have engaged in significant fraud in the pleading of jurisdictional facts.  Their Complaint, which refers to FVP, LLC as "Fanatics VIP," alleges:

Gibson, Dunn & Crutcher LLP

DEFENDANT'S NOTICE OF REMOVAL

13.    Plaintiff Fanatics VIP is a limited liability company formed in California, with headquarters in Los Angles, California.  Fanatics VIP is a California-based affiliate of the global digital sports platform Fanatics Holdings, Inc.  Fanatics has had a Los Angeles office since 2022, and currently employees approximately 80 people there.  Fanatics also maintains offices in Irvine and San Mateo, California. . . .

16.    Venue is proper in Los Angeles County, California, as . . . both Mr. Hermalyn and Fanatics VIP are being harmed by DraftKings' anticompetitive conduct here, and DraftKings is interfering with their business relationships here. . . .

23.    After resigning from DraftKings, Mr. Hermalyn accepted his offer of employment from Fanatics VIP.  He presently serves as the President of Fanatics VIP and the Head of Fanatics' Los Angeles office.

Smith Decl., Ex. A ¶¶ 13, 16, 23.

35.    The lies in just these three paragraphs are overwhelming.  FVP, LLC is not headquartered in Los Angeles; FVP, LLC is literally nascent, it cannot have headquarters mere days after its formation.  *See id.*, Exs. L, M.  FVP, LLC is not an "affiliate" of Fanatics; it is its puppet—an LLC whose sole member, FVP, Inc., is wholly owned by Fanatics.  *Id.*, Ex. Q.  Plaintiffs misleadingly suggest that FVP, LLC has had a Los Angeles office since 2022 and employs 80 people—but that is referring to *Fanatics*, not FVP, LLC, which obviously did not have an office two years before it was formed.  It likewise cannot be the case that FVP, LLC's "business relationships" are being harmed by DraftKings' conduct as alleged, since FVP, LLC—less than a week old—*has* no business relationships.  The purported relationships at issue belong to Fanatics.  And finally, Hermalyn didn't accept an offer of employment from FVP, LLC—when that offer was made (presumably no later than January 29, when Hermalyn set out for his whirlwind tour of Los Angeles), FVP, LLC didn't even exist.  Plaintiffs admit as much in Paragraph 26 of their Complaint: "***Fanatics*** hired Mr. Hermalyn for his unique skills and talents to help Fanatics VIP thrive."  *Id.*, Ex. A ¶ 26.

DEFENDANT'S NOTICE OF REMOVAL

Gibson, Dunn &
Crutcher LLP

36.     In sum, Plaintiff FVP, LLC and its sole member, FVP, Inc., are nothing more than fraudulent shell corporations—strawmen created by Fanatics less than 24 hours before the commencement of Plaintiffs' lawsuit for the sole purpose of destroying diversity. *See id.*, Exs. L, M.  In fact, the state court TRO that Plaintiffs' counsel served (but never filed) reveals that FVP, LLC was never even an intended party to that motion—it was "noticed" by Hermalyn alone.  *See id.*, Ex. I ("**Plaintiff Michael Z. Hermalyn** will and hereby does apply *ex parte* to the Court for: 1. A temporary restraining order . . ." (emphasis added)).  If not at least ostensibly seeking emergency injunctive relief along with Hermalyn, what is FVP, LLC even doing here?  The answer, of course, is being registered in Nevada and taking direction from Fanatics, and nothing more.

37.     *If this is not "fraudulent joinder," it is hard to imagine what is*.  *See Valencia*, 561 F. App'x at 593.  "As a sham corporation," FVP, LLC's "domicile can neither create nor destroy diversity jurisdiction."  *Overrated Prods., Inc.,* 2019 WL 6729718, at \*4 (citing *Yokeno v. Mafnas*, 973 F.2d 803, 809 (9th Cir. 1992)).  As such, FVP, LLC's domicile is irrelevant to the diversity analysis.  *Id.* at \*7 (where evidence revealed plaintiff corporation was assigned royalty rights so it "could initiate [the] suit," the company was a "strawman" and its "domicile [wa]s irrelevant for the purpose of establishing jurisdiction").

## 2.     There is Complete Diversity of Citizenship Between Hermalyn and DraftKings

38.     Once the sham plaintiff FVP, LLC is removed from the analysis, this action is between "citizens of different States and in which citizens or subjects of a foreign state are additional parties."  28 U.S.C. § 1332(a)(3).

39.     For diversity purposes, a person is a citizen of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  A party's residence is prima facie evidence of his or her domicile.  *Ayala v. Cox Auto., Inc.*, 2016 WL 6561284, at \*4 (C.D. Cal. Nov. 4, 2016) (citing *State Farm Mut. Auto.*

*Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)). A party is domiciled where she "resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Plaintiffs allege that Hermalyn is a California resident. Smith Decl., Ex. A ¶¶ 12, 28. DraftKings disputes this allegation; to the best of DraftKings' knowledge Hermalyn is, and at all times herein relevant was, a resident of the State of New Jersey where has lived with his family for years. Karamitis Decl. ¶ 4. Hermalyn should therefore be considered a citizen of New Jersey for purposes of removal. *See Ayala*, 2016 WL 6561284, at \*4.

40. A corporation is a citizen of its state of incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c)(1). DraftKings is a Nevada corporation and has its principal place of business in Massachusetts. Karamitis Decl., ¶ 3. As such, DraftKings is a citizen of Nevada and Massachusetts. *See* 28 U.S.C. § 1332(c)(1); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

41. Accordingly, because Hermalyn is a citizen of New Jersey (or, according to him, California) and DraftKings is a citizen of Nevada and Massachusetts, at the time the Complaint was filed and at the time of removal, there was and is complete diversity of citizenship between Hermalyn and DraftKings. *See* 28 U.S.C. § 1332(a).[5]

## 3. The Amount in Controversy Exceeds $75,000

42. Courts evaluate a removing defendant's assertion of the amount in controversy under a "preponderance of the evidence" standard. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); 28 U.S.C. § 1446(c)(2)(B). Although "[u]sually, 'preponderance of the evidence' is a phrase used for determining whether a factual allegation is, in fact, true. . . . a defendant is not required to admit, and is certainly not required to *prove*, the truth of plaintiff's assertions before invoking diversity jurisdiction." *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1040 (N.D. Cal.

---

[5] DraftKings does not concede, and expressly reserves the right to contest, that personal jurisdiction exists over DraftKings in any state or federal court of California. *See Dielsi v. Falk*, 916 F. Supp. 985, 994 (C.D. Cal. 1996) ("[A] defendant 'does not waive jurisdictional challenges by removing the case to federal court.'").

2014).  "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."  *Lewis*, 627 F.3d at 400.  A removing party must initially file a notice of removal that includes "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). A defendant's amount in controversy allegation "should be accepted when not contested by the plaintiff or questioned by the court."  *Id*. at 87.

43.    The amount in controversy is the "amount at stake in the underlying litigation."  *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (quoting *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005)).  Here, Hermalyn is largely seeking injunctive relief (and some unspecified damages), but that does not mean his claims cannot be valued for the purposes of establishing diversity jurisdiction.  Under the "either viewpoint" rule for valuing claims of declaratory or injunctive relief, the test for determining the amount in controversy is the pecuniary result to either party that the judgment would directly produce.  *In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001) (citing *Ridder Bros., Inc. v. Blethen*, 142 F.2d 395, 399 (9th Cir.1944)).

44.    Here, from Plaintiffs' viewpoint, if Hermalyn is held to his promise not to compete with DraftKings, he will be forced to resign from whatever Fanatics entity is actually employing him, losing what is no doubt a highly lucrative salary.  In his role as Senior Vice President of Growth at DraftKings, Hermalyn made more than $300,000 per year just in base salary.  Karamitis Decl. ¶ 5.  It is reasonable to assume that some Fanatics entity, whether it is FVC, LLC or Fanatics Holdings, Inc., is paying him at least as much, and well more than $75,000 per year.

45.    From DraftKings' viewpoint, if Hermalyn's non-competition and non-solicitation obligations are not enforceable and not enforced, among other things, DraftKings could stand to lose millions of dollars in the form of lost clients, business relationships, and employees.  *Id.* ¶ 8.

46.     Thus, the amount placed in controversy by Plaintiffs' Complaint far exceeds $75,000, as required by 28 U.S.C. § 1332(a).

## V.     THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER

47.     Based on the foregoing facts and allegations, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because:

        a)     This is a civil action within the meaning of 28 U.S.C. § 1332(a);

        b)     The *properly* named parties—Hermalyn and DraftKings—are diverse as required by 28 U.S.C. § 1332(a)(1); and

        c)     The amount in controversy exceeds $75,000 as required by 28 U.S.C. § 1332(a).

48.     Accordingly, this action is properly removable under 28 U.S.C. § 1441.

49.     The United States District Court for the Central District of California is the federal judicial district in which the Los Angeles County Superior Court sits.  This action was originally filed in the Los Angeles County Superior Court, rendering venue in this federal judicial district proper.  28 U.S.C. § 84(c); *see also* 28 U.S.C. § 1441(a).

50.     True and correct copies of all documents constituting the complete record of proceedings in the state court are attached to the Smith Declaration as Exhibits A–F and T–X, filed concurrently herewith.  *See* 28 U.S.C. § 1446(a).

51.     Upon filing this Notice, DraftKings will furnish written notice to Plaintiffs' counsel and will file and serve a copy of this Notice with the Clerk of the Los Angeles County Superior Court, pursuant to 28 U.S.C. § 1446(d).

Dated:  February 5, 2024          Respectfully submitted,


By:  */s/ James Fogelman*

James Fogelman, SBN 116927
Alayna Monroe, SBN 329061
GIBSON, DUNN & CRUTCHER LLP
jfogelman@gibsondunn.com
amonroe@gibsondunn.com
2029 Century Park East, Ste. 4000
Los Angeles, CA 90067
Telephone: 310.552.8500
Facsimile: 310.551.8741

Katherine V.A. Smith, SBN 283812
GIBSON, DUNN & CRUTCHER LLP
ksmith@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Tel.: 213.229.7000
Fac.: 213.229.7520

*Attorneys for Defendant DraftKings, Inc.*

## Certificate of Compliance

The undersigned, counsel of record for Defendant DraftKings, Inc., certifies that this brief contains 6,646 words, exclusive of captions, tables, signature blocks, and this certification, which complies with the word limit of L.R. 11-6.1.

By:  */s/ James Fogelman*
James Fogelman

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S NOTICE OF REMOVAL