GIBSON, DUNN & CRUTCHER LLP
JAMES P. FOGELMAN, SBN 161584
jfogelman@gibsondunn.com
ALAYNA MONROE, SBN 329061
amonroe@gibsondunn.com
2029 Century Park East, Ste. 4000
Los Angeles, CA 90067
Telephone: 310.552.8500
Facsimile: 310.551.8741

KATHERINE V.A SMITH, SBN 247866
ksmith@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Tel.: 213.229.7000
Fac.: 213.229.7520

*Attorneys for Defendant DraftKings, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Michael Z. Hermalyn and FVP, LLC,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>DraftKings, Inc.<br><br>　　　　Defendant. | CASE NO. 2:24-cv-00997<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' <u>EMERGENCY EX PARTE</u> APPLICATION FOR ORDER SHORTENING TIME FOR HEARING ON PLAINTIFFS' MOTION TO REMAND TODAY**<br><br>Date: February 6, 2024<br>Judge: Not Set<br>Courtroom: Not Set<br>Trial Date: None Set |

# TABLE OF CONTENTS

Page

I.　Introduction ................................................................................................... 3

II.　Factual background ....................................................................................... 7

　　A.　Hermalyn and "FVP, LLC" File Suit in California; DraftKings Removes the Case .......................................................................... 7

　　B.　DraftKings Uncovers Plaintiffs' Extensive Fraud Designed in an Attempt to Defeat Federal Jurisdiction ....................................... 8

　　C.　The Case Is Remanded and Now Re-Removed ...................................... 10

　　D.　DraftKings Files in Massachusetts Court, and Plaintiffs Have Been Ordered to Brief Their Argument on the Issues Here by Tomorrow, for a Hearing on Thursday ......................................................... 11

III.　Plaintiffs' *Ex parte* Application Should Be Denied .......................................... 12

　　A.　Plaintiffs' Request Is a Misuse of Local Rule 77-1 ................................. 12

　　B.　There is No Urgency and Plaintiffs Have Made No Showing of Irreparable Harm ............................................................................... 13

　　C.　DraftKings Must Be Permitted Full Briefing on Remand, As Well As Discovery to Uncover Further Evidence of Plaintiffs' Sham Status ............................................................................................ 15

IV.　Conclusion ..................................................................................................... 19

## I. INTRODUCTION

Plaintiffs' request for emergency relief is an egregious misuse of Local Rule 77-1 and this Court's time. Plaintiffs ask this Court to remand the case to state court *today*, without the benefit of briefing and jurisdictional discovery regarding whether Plaintiff FVP, LLC is a sham company formed solely to defeat diversity jurisdiction. The urgency they cite? They claim that they *must* have the opportunity to be heard by the state court on the enforceability of Plaintiff Michael Hermalyn's noncompetition and forum selection clauses with Defendant DraftKings, Inc. ("DraftKings"). But a federal district court in Massachusetts has ***already set a hearing for this Thursday, February 6 in Boston, Massachusetts on DraftKings' Motion for a TRO and Expedited Discovery, which will address the enforceability of Hermalyn's contracts with DraftKings,*** among other issues. In addition, moments before this brief was filed, the Massachusetts court ***denied*** Hermalyn's Motion to Stay the Massachusetts proceeding in favor of this action, which Hermalyn argued should be remanded to state court, under the "First to File" rule. The Massachusetts court concluded that, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *DraftKings v. Hermalyn*, No. 1:24-cv-10299 (D. Mass.), Dkt. 29 (citing Maldonado-*Cabrera v. Anglero-Alfaro*, 26 F.4th 523, 526 (1st Cir. 2022)). Thus, the Massachusetts court's "exercise of jurisdiction here would 'better serve the interests involved.'" *Id.*, citing *EMC Corp. v. Parallel Iron, LLC*, 914 F. Supp. 2d 125, 127 (D. Mass. 2012).

What Plaintiffs are asking is that this Court thwart and override the proceedings of its sister court—which has declared that the case there is ***full steam ahead and scheduled a hearing on the merits in two business days***—on an exceedingly rare emergency basis, to accommodate Plaintiffs' rampant forum-shopping, and in the face of significant evidence that this dispute is subject to federal diversity jurisdiction both under the sham plaintiff ***and*** fraudulent joinder rule. And on top of that, they ask the

Court to do this using a Local Rule that only permits them to seek a temporary restraining order, when what they seek here is neither to restrain nor enjoin DraftKings' conduct.

Plaintiffs' request should be denied.

* * *

Until February 1, 2024, Plaintiff Michael Hermalyn served as Senior Vice President of Growth at DraftKings, Inc., one of the leading digital sports entertainment and gaming companies in the world. Hermalyn worked out of his New Jersey home, sometimes travelling into DraftKings' New York office. Last Thursday, Hermalyn abruptly resigned from DraftKings to work for its competitor, Fanatics, in its Los Angeles office. The same day, Hermalyn and FVP, LLC—an alleged "affiliate" of the global digital sports platform Fanatics Holdings, Inc. ("Fanatics")—filed an action in Los Angeles Superior Court, claiming to seek "emergency" relief under California law and asking to void Hermalyn's noncompete agreements and forum selection clauses which require adjudication of all disputes in Boston, Massachusetts. DraftKings removed the case to federal court that night, based upon apparent diversity between the parties. On Friday, Plaintiffs moved to remand the case on an *ex parte* basis, and the Court granted remand on its own motion on Monday morning, citing Plaintiffs' representation that Plaintiff FVP, LLC, a California LLC, has one member, a Nevada corporation named FVP, Inc. This, the Court observed, destroys complete diversity because DraftKings is also registered in Nevada.

But Plaintiffs failed to disclose to this Court the full history and context of this corporate structure. FVP, LLC, which purportedly employs Hermalyn, was formed a mere ***one day*** before they filed their lawsuit in state court. And according to the Declaration of Fanatics' Chief Legal Officer, Gregg Winiarski—which DraftKings received for the first time the day after it filed its first removal—FVP, LLC has just one member: FVP, Inc., incorporated in Nevada. With this new information, DraftKings was able to discover that FVP, Inc., was also formed ***one day*** before this lawsuit was filed, with only one officer: the Chief Financial Officer of Fanatics, Inc. Then, in the

Notice of Interested Parties filed by Plaintiffs on February 4, DraftKings learned that FVP. Inc., in turn, is fully owned by Fanatics. In short, FVC, LLC and FVC, Inc. are sham companies owned and directed in all ways by Fanatics itself, formed one day before this lawsuit was filed for one purpose and one purpose only—to improperly forum shop by trying to destroy complete diversity with DraftKings. They were formed literally at the last minute in an attempt to allow Hermalyn and Fanatics, the real parties in interest and parties diverse from DraftKings, to sue in state court.

There is no other way to describe this than ***an attempted fraud on the Court***.

Accordingly, DraftKings re-removed the case to federal court last night, on the basis that FVP, LLC's domicile should be ignored for the purposes of federal jurisdiction, arguing ***both*** that the company is a sham, ***and*** that it was fraudulently joined. *See Overrated Prods., Inc. v. Universal Music Grp.,* No. CV 19-2899-RSWL-RAO, 2019 WL 6729718, at *7 (C.D. Cal. July 31, 2019) (where evidence revealed plaintiff corporation was assigned royalty rights so it "could initiate [the] suit," the company was a "strawman" and its "domicile [wa]s irrelevant for the purpose of establishing jurisdiction"); Fed. R. Civ. P. 17(a) ("An action must be prosecuted in the name of the real party in interest."). Plaintiffs do not attempt to excuse their fraud, do not deny forum-shopping, and do not deny FVP, LLC and FVP, Inc. were formed for the ***sole purpose of defeating federal jurisdiction***. Instead they argue that the Court should simply ignore these troubling facts, and remand the case on a ***same-day basis***—without even affording DraftKings the opportunity to oppose a remand motion—so that they can be heard in the forum of their choosing, tomorrow, rather than one day later presenting their arguments in the federal court in Boston.

Generally, motions to remand are not urgent matters; they are heard on regularly-noticed motion schedules, with full briefing. But Plaintiffs here demand immediate remand to the state court. Plaintiffs' hasty request for emergency relief should be summarily denied on multiple grounds.

*First*, their request is a misuse of Local Rule 77 and an attempt to circumvent the removal statutes. Local Rule 77-1 allows a party to obtain court action prior to the next business day in "exceedingly rare" cases. Such relief must be "sought by filing, during normal business hours, a written application for a temporary restraining order ('TRO')." But there is nothing to restrain or enjoin here and Plaintiffs identify no conduct by DraftKings to try to restrain. Plaintiffs don't even try to articulate the basis for a TRO. What Plaintiffs are really seeking is a remand order on a highly complex and fact-dependent issue of diversity jurisdiction where a sham plaintiff is present, and no rule permits them to seek such an order in the same business day, let alone without opposition.

*Second,* there is no urgency to deciding the question of remand, much less such urgency justifying the "exceedingly rare" cases where emergency relief is granted on the same day it is sought. While Plaintiffs claim the dispute must be remanded to state court immediately because DraftKings has filed suit in Massachusetts, this does not qualify as irreparable harm, particularly since they have not shown that the Massachusetts court cannot properly adjudicate the dispute. Indeed, the Massachusetts court has **already set a hearing** on the precise issues that Plaintiffs seek to adjudicate in California state court. They have a scheduled and set opportunity to make their case to a federal court in Boston on Thursday (which is more than what they hope to afford DraftKings here). Moreover, any alleged time crunch is one of their own making—they deliberately filed this lawsuit right before the Super Bowl, the biggest weekend of the year for DraftKings and Fanatics—and did so in state court with a fraudulent plaintiff. If they are unhappy that they have been swept into a removal and remand process, they have only themselves to blame.

*Third*, if any attempt at remand cried out for full and complete briefing—as well as jurisdictional discovery—it is this one. This is the most egregious attempt to fraudulently circumvent diversity jurisdiction counsel has ever seen. Hermalyn and Fanatics, knowing they were completely diverse from DraftKings, created two fictional

sham companies one day before filing suit to avoid federal jurisdiction. This is extraordinary, potentially sanctionable conduct and an abuse of the judicial system. Plaintiffs' *ex parte* should be denied to allow discovery and briefing on Plaintiffs' use of strawmen companies to proceed.

## II. FACTUAL BACKGROUND

A full recitation of the applicable facts—including Plaintiffs' extensive wrongdoing—is set forth in DraftKings' Notice of Removal. The particularly pertinent facts are repeated here for the Court's convenience.

### A. Hermalyn and "FVP, LLC" File Suit in California; DraftKings Removes the Case

On the morning of February 1, 2024, Hermalyn gave notice of his resignation from DraftKings, stating that he would be joining "Fanatics" as "President and the Head of the Los Angeles office." Dkt. 1-1, Ex. A ¶ 21. Minutes later his counsel provided ex parte notice of their intent to appear the next day in Los Angeles Superior Court (LASC) seeking an injunction preventing DraftKings from enforcing the Noncompetition Covenants. *Id.*, Ex. G at 1.

Facing the ticking clock of an 8:30 a.m. hearing, by mid-day Thursday DraftKings had begun preparing a notice of removal. Given that DraftKings is a Nevada corporation with its headquarters in Boston, and Hermalyn is a New Jersey resident, there would plainly be complete diversity between the parties. Dkt. 1-2, ¶¶ 3, 4. When DraftKings finally received the complaint Thursday at nearly 3 p.m., it learned that (1) Hermalyn was claiming to be a California resident, and (2) there was also a co-Plaintiff, Hermalyn's alleged employer, FVP, LLC (even though only Hermalyn is party to the relevant agreement). Dkt. 1-1, Ex. A ¶¶ 5, 6. As to Hermalyn, there would be diversity between him and DraftKings regardless of whether he is a New Jersey or California resident. Dkt. 1-2, ¶ 3. As to FVP, LLC, DraftKings had never heard of the company, but the complaint represented that FVP, LLC was "formed in California" "with headquarters in Los Angeles," and was a "California-based affiliate" of the "global

digital sports platform Fanatics Holdings, Inc." (Dkt. 1-1, Ex. A ¶ 13), which itself is a Delaware corporation headquartered in New York. DraftKings removed the case that night. Dkt. 1-1, Ex. F.

**B.  DraftKings Uncovers Plaintiffs' Extensive Fraud Designed in an Attempt to Defeat Federal Jurisdiction**

Around noon on Friday, Hermalyn's counsel emailed DraftKings to "meet and confer" about DraftKings' removal. "One of FVP, LLC's members is a Nevada citizen," she wrote, asking that DraftKings "stipulate to remand." Dkt. 1-1 Ex. K at 11. An hour later, Hermalyn's counsel wrote again, providing notice that Plaintiffs would be filing an *ex parte* application, noticed for Monday, February 5, at 9:00 a.m. before this Court, seeking to shorten time on their motion to remand, and asking again that DraftKings stipulate to remand, "given that there is no reasonable dispute regarding the lack of subject matter jurisdiction." *Id.* at 10.

These emails started a chain reaction of discoveries through which DraftKings learned that, contrary to Plaintiffs' contention that there could be "no reasonable dispute" regarding the remand, DraftKings had every reason to contest the purported lack of complete diversity among the parties.

The first eyebrow-raising fact that DraftKings uncovered was about Plaintiff FVP, LLC. Per the Articles of Organization filed with the Secretary of State, ***Plaintiff FVP, LLC had been formed just one day before the lawsuit was filed***. Dkt. 1-1, Ex. L. DraftKings had never heard of FVP, LLC because, prior to January 31, 2024, it didn't exist. Thus, while Plaintiffs' complaint alleged that FVP, LLC was "headquarter[ed] in Los Angeles, California" and "is a California-based affiliate of" Fanatics, and that Hermalyn "accepted his offer of employment" from FVP, LLC and "presently serves as [its] President" (*id.*, Ex. A ¶¶ 13, 23), all of that had apparently happened in a 24-hour period before the complaint was filed (if it happened at all).

The next, even more disturbing revelation came shortly thereafter, when Plaintiffs filed their Motion to Remand. *Id.*, Ex. O. The supporting Declaration of Fanatics' Chief

Legal Officer, Gregg Winiarski, stated that FVP, LLC has just one member[1]: FVP, Inc., incorporated in Nevada. *Id.*, Ex. P ¶¶ 6, 7. DraftKings had also never heard of FVP, Inc., so it then quickly searched the Nevada Business Portal, discovering that ***FVP, Inc. had also been formed on January 31, 2024—just one day before this lawsuit was filed.*** *Id.*, Ex. M. The only officer of FVP, Inc. listed is Glenn Schiffman—Chief Financial Officer of Fanatics, Inc. *Id.* ¶ 15. And when Plaintiffs filed their Notice of Interested Parties on February 4, it was further revealed that FVP, Inc. is "wholly owned by Fanatics Holdings, Inc., a Delaware Corporation." *Id.*, Ex. Q at 2. Putting these pieces together: Fanatics Holdings, Inc. fully owns FVP, Inc., which is the sole member of FVP, LLC, making FVP, LLC nothing more than a sham company directed in all ways by Fanatics itself and created solely in an attempt to destroy diversity jurisdiction.

In short, DraftKings has found itself smack in the middle of an elaborate and fraudulent charade. Fanatics had been scheming for months to hire Hermalyn and bring this lawsuit in an attempt to void his contract with a forum selection clause, take advantage of more favorable California law, and avoid third-party liability for its willful interference. But it knew that if it joined the suit with Hermalyn, or if Hermalyn filed alone, the case would be removable to federal court. So, just ***one day before filing***, Fanatics created a Nevada company, with the Fanatics Inc. CFO as its sole officer, and then formed a California LLC, with the Nevada company as its sole member. *Id.*, Exs. L, M; ¶ 15. The cherry on top? Fanatics arranged for Hermalyn to be the "President" of the brand-new FVP, LLC, even though his role was to be the Head of ***Fanatics'***—not FVP, LLC's—Los Angeles office. *Id.*, Ex. A ¶ 23. By nominally having FVP, LLC employ Hermalyn, the sham entity could plead a purported interest in the litigation, and disguise that it is a completely fraudulent plaintiff designed solely to defeat diversity jurisdiction.[2]

---

[1] Revealing that Hermalyn's counsel's prior representation that FVP, LLC had multiple "members" was yet another falsehood. Dkt. 1-1, Ex K at 11.

[2] On Friday, DraftKings' counsel requested copies of the incorporation documents of FVP, LLC and any members, but never received them. Dkt. 1-1, Ex K at 8–9.

With this new knowledge, DraftKings re-reviewed the complaint, where it became apparent that Plaintiffs had attempted to hide their fraud through vague allegations and deliberate obfuscation. While the complaint alleges that Hermalyn is "employed by" FVP, LLC (*Id.*, Ex. A ¶ 12), almost all other allegations are only about "Fanatics," confusingly defined to encompass "Fanatics Holdings, Inc. (together with its subsidiaries and affiliates, including Fanatics VIP)." *Id.*, Ex. A at 1. The complaint (which refers to FVP, LLC as "Fanatics VIP") uses "Fanatics VIP" and "Fanatics" almost interchangeably, apparently drafted to be intentionally opaque and confer legitimacy on "FVP, LLC"—an entity that appears to exist only on paper. *See e.g. Id.* ¶ 13 ("**Fanatics VIP** is a California-based affiliate of the global digital sports platform Fanatics Holdings, Inc. **Fanatics** has had a Los Angeles office since 2022, and currently employs approximately 80 people there."); ¶ 26 ("**Fanatics** hired Mr. Hermalyn for his unique skills and talents to help **Fanatics VIP** thrive. As Head of **Fanatics'** Los Angeles office, Mr. Hermalyn will oversee and administer the operations of the Los Angeles office. . .") (emphases added). In reality, Hermalyn lives in New Jersey, he works from home, his kids go to school in New Jersey, and his wife works in New York. The claim he is a resident of California is a sham.

**C.    The Case Is Remanded and Now Re-Removed**

Plaintiffs filed their motion to remand and *ex parte* application to shorten time on that motion Friday afternoon. Dkt. 1-1, Exs. N–P. Over the weekend, armed with startling new information regarding Plaintiffs' fraudulent scheme, DraftKings' counsel prepared its response to that ex parte application, outlining the clear case for diversity jurisdiction because of Fanatics' use of a sham company and its fraudulent joinder. However, the Court remanded the case on its own motion before DraftKings was able to present this evidence in its Opposition that afternoon, as permitted under the rules. *Id.,* Ex. R.

Without the benefit of this new information, the Court found that diversity jurisdiction did not exist because Plaintiffs "offer[ed] evidence that FVP[,] [LLC]'s sole

member is a citizen of Nevada," citing the Winiarski Declaration, and "Defendant, like FVP, [LLC,] is a citizen of Nevada." The Court then concluded "complete diversity of citizenship is lacking, 28 U.S.C. § 1332(a)." *Id.* at 2. Of course, what the Court did not know at the time it ruled, just as DraftKings did not know when it first removed the case, was that FVP, LLC and FVP, Inc. are not the real parties in interest and instead are mere sham companies, fully controlled by Fanatics, Inc. and designed solely to destroy federal jurisdiction.

### D. DraftKings Files in Massachusetts Court, and Plaintiffs Have Been Ordered to Brief Their Argument on the Issues Here by Tomorrow, for a Hearing on Thursday

On Monday night, February 5, DraftKings filed an action against Hermalyn in the U.S. District Court for the District of Massachusetts, seeking a temporary restraining order against Hermalyn, arising from his theft of DraftKings' documents on the eve of his departure from the company—documents that he downloaded from Fanatics' California offices while he was purportedly taking off from DraftKings to mourn the death of a friend. *DraftKings v. Hermalyn*, No. 1:24-cv-10299 (D. Mass.). DraftKings asserts claims for federal and state trade secret misappropriation arising from the theft, as well as breach of Hermalyn's confidentiality agreement with DraftKings, and his noncompetition and non-solicitation covenants with DraftKings. DraftKings also asserts common law claims, arising out of Hermlayn's deceptive conduct and misuse of corporate funds. Dkts. 1, 3, 4. In addition to the TRO motion, DraftKings filed a motion for expedited discovery, seeking limited document requests, a forensic inspection, and a deposition, in anticipation of its forthcoming motion for a preliminary injunction. Dkt. 7.

The case was formally opened on Tuesday morning, February 6, and assigned to Judge Kobick. Judge Kobick promptly ordered Hermlayn to file a response, if any, to DraftKings' motion for a temporary restraining order, and motion for expedited discovery, by 4:00 p.m. on Wednesday, February 7. Dkt. 24. Judge Kobick further set a hearing on the two motions for Thursday, February 8 at 1:00 p.m. Dkt. 23.

And, moments before this brief was filed, Judge Kobick denied Hermalyn's Motion to Stay the Massachusetts proceeding in favor of this action, which Hermalyn argued should be remanded to state court, under the "First to File" rule. Judge Kobick concluded that, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *DraftKings v. Hermalyn*, No. 1:24-cv-10299 (D. Mass.), Dkt. 29 (citing Maldonado-*Cabrera v. Anglero-Alfaro*, 26 F.4th 523, 526 (1st Cir. 2022)). Thus, the Massachusetts court's "exercise of jurisdiction here would 'better serve the interests involved.'" *Id*., citing *EMC Corp. v. Parallel Iron, LLC*, 914 F. Supp. 2d 125, 127 (D. Mass. 2012).

### III. PLAINTIFFS' *EX PARTE* APPLICATION SHOULD BE DENIED

#### A. Plaintiffs' Request Is a Misuse of Local Rule 77-1

Plaintiffs' request is a misuse of Local Rule 77 and an attempt to circumvent the removal statutes. Local Rule 77-1 allows a party to obtain court action prior to the next business day in "exceedingly rare" cases. Such relief must be "sought by filing, during normal business hours, a written application for a temporary restraining order ('TRO')." But there is nothing to restrain or enjoin here. What Plaintiffs are seeking is not a restraining order or preliminary injunction, but a remand order on a highly complex and fact-dependent issue of diversity jurisdiction where a sham plaintiff is present.

A party may only seek remand to state court via a noticed motion. 28 U.S. Code § 1447(c). While a party can seek to shorten time on such a motion, such relief can only be obtained through an *ex parte* application under Local Rule 7-19, which affords the opposing party time to respond. Plaintiffs ignored that procedure here, and instead seek to invoke Local Rule 77-1, which is only applicable where a party seeks a TRO. No rule permits them to seek a remand order in the same business day, let alone without affording DraftKings an opportunity to oppose it.

B.  **There is No Urgency and Plaintiffs Have Made No Showing of Irreparable Harm**

A preliminary injunction, as well as a temporary restraining order, is an extraordinary remedy. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The relief Plaintiffs seek—*same day* relief under Local Rule 77-1—is even more expedited, and thus must meet an even higher standard of potential prejudice—than *ex parte* relief. And, as recognized in this Court's Standing Order, the *ex parte* standard itself is incredibly high. *Ex parte* applications are "solely for extraordinary relief and are rarely granted." Scarsi, J. Standing Order (citing *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995)). When such an application is submitted, "[t]he judge drops everything except other urgent matters to study the papers. It is assumed that the tomatoes are about to spoil or the yacht is about to leave the jurisdiction and that all will be lost unless immediate action is taken. Other litigants are relegated to a secondary priority. The judge stops processing other motions. Even hearings or trials—where a courtroom full of deserving users of the court are waiting—are often interrupted or delayed." *Mission Power*, 833 F. Supp. at 491-492. For this reason, there are few times when a "lawyer's credibility is more on the line, more vulnerable," than when filing an *ex parte* application: "Lawyers must understand that filing an *ex parte* motion, whether of the pure or hybrid type, is the forensic equivalent of standing in a crowded theater and shouting, 'Fire!' There had better be a fire" *Id.* at 492.[3] There is no fire here.

To justify *ex parte* relief, the moving party must show (1) that his "cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures," and (2) that he is "without fault in creating the crisis that requires

---

[3] If anyone should know this, it is Hermalyn's counsel, Munger, Tolles & Olson LLP. They represented the plaintiff in *Mission Power* who brought the ill-fated *ex parte* application (and apparently many others). *Mission Power*, 833 F. Supp. at 490 ("This is the seventh ex parte motion filed in this case in just the last two months. Ex parte motions have almost become the normal manner of communicating with the court in this case.").

ex parte relief, or that the crisis occurred as a result of excusable neglect." *Kohn L. Grp., Inc. v. Jacobs*, 2018 WL 6131149, at *1 (C.D. Cal. Feb. 16, 2018). Plaintiffs can satisfy neither of these criteria.

As an initial matter, to the extent Plaintiffs have claimed any emergency exists, it is one created solely by their own tactical scheming and timing. Any delay caused by the removal of this matter to federal court and the briefing of a remand motion is purely a result of Plaintiffs' misguided decision to create a fraudulent LLC with a fraudulent Nevada member to avoid this court's jurisdiction. *See Beckner v. Recontrust Co.*, 2012 WL 12882424, at *1 (C.D. Cal. Jan. 26, 2012) (courts will not grant a TRO where a plaintiff "unreasonably delayed in seeking relief, and . . . the emergency that allegedly justifie[d] a TRO [was] self-created.)"; *see also Avitan v. Kirchmeyer,* 2023 WL 2372384, at *1 (C.D. Cal. Jan. 20, 2023); *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 193-94 (C.D. Cal. 1989) (denying *ex parte* because it was not based on "any real urgency"); *BCS Bus. Consulting Servs. Pte. Ltd. v. Baker*, 2023 WL 6373870, at *2 (C.D. Cal. July 26, 2023 (denying *ex parte* because the applicant could not "show that it was not 'without fault' in creating the instant 'crisis' that it faces").

Moreover, the only potential "irreparable harm" Plaintiffs claim is a pending lawsuit in another jurisdiction. But for that action to satisfy the necessary showing of harm, Plaintiffs "would have to show there is a likelihood that another court, and in particular the [Massachusetts] court where the preceding related action is ongoing, 'would fail to properly police its own jurisdiction and thus not dismiss, transfer, or stay proceedings'" if merited. *Kohn*, 2018 WL 6131149, at *1. Plaintiffs have not even attempted to make such a showing, nor could they. Hermalyn (and FVP, LLC, to the extent it exists at all) will have every opportunity to present their arguments about enforceability of Hermalyn's agreements in Massachusetts—the forum where Hermalyn contractually agreed that actions arising from his employment with DraftKings would be heard. Dkt. 1-1, Exs. D, E. Indeed, the Massachusetts federal court has already scheduled just that opportunity for them—Hermalyn and Fanatics are scheduled to

submit their briefing on these issues ***tomorrow***, with a hearing on ***Thursday***. *DraftKings v. Hermalyn*, No. 1:24-cv-10299 (D. Mass.), Dkts. 23, 2.

"This Court cannot premise injunctive relief on the theory that another District Court will be derelict in its duty, nor does any evidence suggest that it will be." *Kohn*, 2018 WL 6131149, at *1 (denying *ex parte* request to enjoin defendants "from pursuing any actions or proceedings, including Defendants' previously filed action in Miami, Florida, in purported violation of" the parties' contract). By asking this Court to find that they have an urgent need to be heard in California state court, Plaintiffs are asking that this Court effectively conclude that the California state court is the more appropriate forum and that the Massachusetts court is not equipped to adjudicate this dispute. If that is not the Court's conclusion (as it should not be, given that there is no evidence to support it), then there is no urgency to Plaintiffs' request. *See Advanced Bionics Corp. v. Medtronic, Inc.*, 29 Cal. 4th 697, 708 (2002), *as modified* (Mar. 5, 2003) (holding trial court improperly issued TRO enjoining employer from pursuing action to enforce non-compete clause in another state, noting that "potentially conflicting judgments naturally result from parallel proceedings but do not provide a reason for issuing a TRO"); *TSMC N. Am. v. Semiconductor Mfg. Internat. Corp.*, 161 Cal. App. 4th 581, 600 (2008) ("The mere possibility that [a foreign] court may someday make a ruling in the [foreign] action that contradicts California public policy does not constitute an exceptional circumstance sufficient to justify an injunction against pursuit of the foreign proceedings.").[4] They can have their remand motion heard on a regularly noticed-motion schedule.

**C.    DraftKings Must Be Permitted Full Briefing on Remand, As Well As Discovery to Uncover Further Evidence of Plaintiffs' Sham Status**

The serious jurisdictional (and ethical) questions raised by Plaintiffs' fabrication of, and misrepresentations about, FVP, LLC cannot be decided on an expedited basis.

Even the extremely limited publicly available information about this entity has

---

[4] And to the extent Plaintiffs claim the possible irreparable harm to them is a delay in Hermalyn's ability to pursue his TRO in California state court, given that this case belongs in *federal court*, this alleged "harm" is no harm at all.

made clear that there is no cut-and-dry basis for the remand Plaintiffs seek. Plaintiff FVP, LLC and its sole member, FVP, Inc., are nothing more than fraudulent shell corporations—strawmen created by Fanatics less than 24 hours before the commencement of Plaintiffs' lawsuit for the sole purpose of destroying diversity. Dkt. 1-1, Exs. D, E. In fact, the state court TRO that Plaintiffs' counsel served (but never filed) reveals that FVP, LLC was never even an intended party to that motion—it was "noticed" by Hermalyn alone. *See* Dkt. 1-4 at 2 ("**Plaintiff Michael Z. Hermalyn** will and hereby does apply *ex parte* to the Court for: 1. A temporary restraining order . . .") (emphasis added). If not at least ostensibly seeking emergency injunctive relief along with Hermalyn, what is FVP, LLC even doing here? "As a sham corporation, [FVP, LLC's] domicile can neither create nor destroy diversity jurisdiction." *Overrated Prods., Inc.,* 2019 WL 6729718, at *4 (citing *Yokeno v. Mafnas*, 973 F.2d 803, 809 (9th Cir. 1992). ***If this is not a fraud on the Court, it is hard to know what is.***

Plaintiffs' attempt to avoid this obvious conclusion by misstating and misapplying the law. First, they claim that the doctrine of fraudulent joinder cannot apply to a plaintiff. But this is a game of semantics.[5] Regardless of how it is described, the Ninth Circuit *clearly* will not permit fraudulent use of sham plaintiffs to defeat jurisdiction. *See Attorneys Trust* v. *Videotape Computer Prod.*, 93 F.3d 593, 598 (9th Cir. 1996) (courts need not "countenance destruction of jurisdiction by the use of straw parties," particularly where the result would deprive a party of the "forum to which [it] would otherwise be entitled" and the "jurisdiction which Congress conferred upon the federal courts [would be] manipulated"); *Overrated Prods.*, 2019 WL 6729718, at *7 (where

---

[5] Fraudulent joinder is often applied to plaintiffs in other jurisdictions. *See Campbell v. Quixtar, Inc.*, No. 2:08-CV-0045, 2008 WL 2477454, at *3-4 (N.D. Ga. June 16, 2008); *Hodach v. Caremark RX, Inc.*, 374 F. Supp. 2d 1222, 1224 (N.D. Ga. 2005); *Agrowstar, LLC v. Branch Banking & Tr. Co.*, No. 5:14-CV-379, 2015 WL 5749456, at *2 (M.D. Ga. Sept. 30, 2015); *Ferry v. Bekum Am. Corp.*, 185 F. Supp. 2d 1285, 1291 (M.D. Fla. 2002); *Koch v. PLM Int'l, Inc.*, No. CIV. A. 97-0177-BH-C, 1997 WL 907917, at *2-*4 (S.D. Ala. Sept. 24, 1997); *Rudder v. Kmart Corp.*, No. CIV. A. 97-0272-BH-S, 1997 WL 907916, at *3 (S.D. Ala. Oct. 15, 1997).

evidence revealed plaintiff corporation was assigned royalty rights so it "could initiate [the] suit," the company was a "strawman" and its "domicile [wa]s irrelevant for the purpose of establishing jurisdiction"). Thus, whether a plaintiff's domicile is legally disregarded through by "fraudulent joinder" or the declaration that it is a straw party, the rule is the same: sham, strawman, and fraudulent parties cannot defeat federal jurisdiction. Notably, DraftKings alleges both fraudulent joinder *and* use of sham parties in its removal notice. Plaintiffs focus only on the former—knowing the latter dooms them.

Indeed, while Plaintiffs insist the Court cannot "look behind the curtain" at their motivation for choosing FVP, LLC, a non-diverse party, as the plaintiff, that is not the case where the non-diverse party is a sham or strawman for the real party in interest, as is the case here. Rule 17 is clear: "An action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). Here, FVC, LLC is the puppet of Fanatics, controlled in all ways by that Company and formed solely to destroy jurisdiction—***and Plaintiffs don't deny it***. And where a corporation is clearly a sham, used by the real party in interest to avoid federal jurisdiction, motivation is *highly* relevant. *See Overrated Prods., Inc.,* 2019 WL 6729718, at *5-7 (analyzing the various justifications and reasons proffered for why non-diverse plaintiff was the party to file suit; concluding that "[t]he evidence reveals that the royalties at the hear of this Action were assigned to Overrated so that Overrated could initiate this suit, and thus, Overrated is a strawman"). Indeed, the law is well-established that a strawman plaintiff cannot be used to defeat federal jurisdiction where the choice of plaintiff was "motivated by a desire to defeat diversity jurisdiction" and the strawman "had no real interest in the outcome of the case, although a good outcome would have had some economic value." *Attorneys Trust*, 93 F.3d at 598. Obviously, as these cases recognize, the Court cannot know whether a party is a strawman without analyzing the motivation behind the choice of plaintiff, and

whether there is another party litigating its own interests through that plaintiff.[6]

All in all, Plaintiffs cannot genuinely dispute that neither a sham company nor strawman are permitted to destroy federal jurisdiction, and they cannot dispute that FVP, LLC is exactly that. Accordingly, FVP, LLC's domicile should be irrelevant to the diversity analysis. *Overrated Prods., Inc.*, 2019 WL 6729718, at *7 (where evidence revealed plaintiff corporation was assigned royalty rights so it "could initiate [the] suit," the company was a "strawman" and its "domicile [wa]s irrelevant for the purpose of establishing jurisdiction"). But at a bare minimum, given this record, DraftKings is entitled to an unabridged briefing schedule on the question of remand and fraudulent joinder. *See Mission Power*, 833 F. Supp. at 491 ("The rules contemplate that regular noticed motions are most likely to produce a just result" because " they give the adversary an opportunity to prepare a thorough opposition (and, if needed, an opportunity for oral argument) according to a predesigned, consistent timetable"). And given the highly concerning facts uncovered to date, DraftKings should be afforded the opportunity to conduct jurisdictional discovery to probe the nature and full extent of Plaintiffs' corporate conspiracy. *See Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1228 (9th Cir. 2019) ("[H]ad [Plaintiff] challenged the truth of the jurisdictional

---

[6] Plaintiffs claim that the instant case is distinguishable from *Attorneys Trust* because that case involved a fraudulent assignment. Dkt. 6-8. That is a distinction without a difference. An assignment is the transfer of a right to take action. That is precisely what Fanatics did here by recruiting Hermalyn, but then forming FVP, LLC to nominally employ him: Fanatics "assigned" the rights of an employer from Fanatics to FVP, LLC. But make no mistake – Fanatics is the corporation that stands to gain from Hermalyn's defection from DraftKings. If anything, the case for disregarding FVP, LLC's domicile is even stronger here; at least with a formal assignment, there is a legal transfer of rights. Here, Fanatics merely created a puppet corporation and "slapped a sticker on it" that says "employer." Indeed, given that FVP, LLC has existed for a shorter period of time than most cartons of milk, it is highly doubtful that FVP, LLC is undertaking the labors of employment itself; more likely, with discovery, we would find that Fanatics is providing payroll, unemployment insurance, training, and so forth for FVP, LLC. Tellingly, Plaintiffs do not even attempt to address *Overrated*—which concluded that the domicile of a sham company, used by the real party in interest to defeat federal jurisdiction, must be ignored. *Overrated Prods., Inc.,* 2019 WL 6729718, at *7.

allegations in [Defendant's] notice of removal, the district court should have permitted jurisdictional discovery had [Defendant] requested it."); *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 691 (9th Cir. 2006) ("If Plaintiff seeks remand, Defendant may request that the Court delay a decision pending completion of limited discovery.") (quoting *McCraw v. Lyons*, 863 F. Supp. 430, 435 (9th Cir. 2001)).

For example, DraftKings should be permitted to obtain copies of the corporate records of FVP, LLC and FVP, Inc. What is their corporate structure? Do they follow corporate formalities, have separate boards and accounts? Have they each been adequately capitalized? And if FVP, LLC truly employs Hermalyn, is there an offer letter? Does it require him to work from California full-time, or can he work remote from New Jersey as he did for DraftKings? Has FVP, LLC registered with the Employment Development Department and does it have workers' compensation insurance? Who does Hermalyn report to? Who reports to him, and what entity do those people work for? ***And who is paying FVC, LLP's legal fees in this action?***

Similarly, DraftKings should be permitted discovery into Hermalyn's purported California residency. How long is his "lease," and where is this alleged apartment located? Is it furnished? Big enough for a family? What is the plan for Hermalyn's wife's career, given that she works in New York? What is the plan for their multi-million dollar New Jersey home? And perhaps most perplexing to us California natives: how did Hermalyn obtain a drivers' license in Los Angeles in two days?

In any event, whether such discovery is permitted or not, Plaintiffs' emergency request for an immediate determination of remand should be denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs egregious misconduct should not be countenanced, and their *ex parte* application should be denied.

Dated: February 6, 2024

Respectfully submitted,

By: */s/ James Fogelman*

James Fogelman, SBN 116927
Alayna Monroe, SBN 329061
GIBSON, DUNN & CRUTCHER LLP
jfogelman@gibsondunn.com
amonroe@gibsondunn.com
2029 Century Park East, Ste. 4000
Los Angeles, CA 90067
Telephone: 310.552.8500
Facsimile: 310.551.8741

Katherine V.A. Smith, SBN 283812
GIBSON, DUNN & CRUTCHER LLP
ksmith@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Tel.: 213.229.7000
Fac.: 213.229.7520

*Attorneys for Defendant DraftKings, Inc.*

**Certificate of Compliance**

The undersigned, counsel of record for Defendant DraftKings, Inc., certifies that this brief contains 6,179 words, exclusive of captions, tables, signature blocks, and this certification, which complies with the word limit of L.R. 11-6.1.

By: */s/ James Fogelman*
James Fogelman

Gibson, Dunn & Crutcher LLP