BRAD D. BRIAN (SBN 79001)
brad.brian@mto.com
BETHANY W. KRISTOVICH (SBN 241891)
bethany.kristovich@mto.com
ANNE K. CONLEY (SBN 307952)
anne.conley@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

*Attorneys for Plaintiff*
*MICHAEL Z. HERMALYN*

Michael B. Carlinsky (*pro hac vice forthcoming*)
michaelcarlinsky@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Facsimile:   (212) 849-7100

David C. Armillei (SBN 284267)
davidarmillei@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

*Attorneys for Plaintiff*
*FVP, LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Michael Z. Hermalyn and FVP, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>DraftKings, Inc.,<br><br>Defendant. | Case No. 2:24-cv-00918<br>Case No. 2:24-cv-00997<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>*[Filed concurrently with Brian Decl.; Armillei Decl.; Kristovich Decl.; [Proposed] Order]*<br><br>Date:            March 11, 2024<br>Time:           9:00 a.m.<br>Judge:          Hon. Mark C. Scarsi<br>Courtroom:   7C<br>Trial Date:    None Set |

**TO THE COURT, ALL PARTIES, AND ALL ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 11, 2024, at 9:00 a.m., in Courtroom 7C of the above-entitled court, located at 350 W. 1st Street, 7th Floor, Los Angeles, California 90012, the Honorable Mark C. Scarsi presiding, Plaintiffs Michael Z. Hermalyn and FVP, LLC ("Fanatics VIP") (collectively with Mr. Hermalyn, "Plaintiffs") shall move, and hereby do move, under 28 U.S.C. § 1447(c) for an order requiring "payment of just costs and any actual expenses, including attorney fees, incurred as a result of" DraftKings' successive improper removals of this case on February 1 and February 5, 2024.

This motion is timely. The Court twice remanded this case—on February 5 and 8, 2024—but under *Moore v. Permanente Med. Grp., Inc.*, 981 F.2d 443, 445 (9th Cir. 1992), it retained jurisdiction in each instance to consider any post-remand motion for fees and costs. The Court set a briefing schedule that required Plaintiffs to file this motion by February 12, 2024. (Case No. 2:24-cv-00918, ECF No. 14; Case No. 2:24-cv-00997, ECF No. 19.) Plaintiffs asked DraftKings to resolve the issue by stipulation to advance the "just, speedy, and inexpensive determination" of this matter by obviating the need for further expenditure of resources in federal court, Fed. R. Civ. P. 1, but the parties were unable to come to a resolution. *See* Kristovich Decl. ¶ 2, Ex. A

This Motion is based on this Notice of Motion and Memorandum of Points and Authorities; the accompanying Declaration of Brad D. Brian, Declaration of David C. Armillei, and Declaration of Bethany W. Kristovich; all pleadings and papers of record on file in these cases, and such additional authority and argument as may be presented at or before the time this motion is submitted and heard.

DATED:  February 12, 2024

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

By: _____/s/ Brad D. Brian_____
        BRAD D. BRIAN

*Attorneys for Plaintiff*
MICHAEL Z. HERMALYN

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: ___/s/ David C. Armillei_____
        DAVID C. ARMILLEI[1]

*Attorneys for Plaintiff*
FVP, LLC

---

[1] Signed electronically by Brad D. Brian with the concurrence of David C. Armillei, pursuant to L.R. 5-1(i)(3).

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   BACKGROUND ................................................................................. 2

    A.    DraftKings' First Improper Removal....................................... 3

    B.    DraftKings' Second Improper Removal .................................. 4

III.   ARGUMENT ..................................................................................... 7

    A.    DraftKings' Removals Lacked an Objectively Reasonable Basis.......... 8

        1.    The First Removal Was Patently Deficient Under Law It Cited and Done Without Any Investigation Whatsoever ............ 8

        2.    The Second Removal Was Executed Without Facts or Evidence and Similarly Sought Only to Delay the Pending State Court Proceedings............................................................. 11

    B.    Because Both Removals Were Objectively Unreasonable, Attorneys' Fees Are Warranted .................................................. 13

    C.    The Attorneys' Fees Sought by Plaintiffs Are Reasonable ................. 14

        1.    Plaintiffs' Counsel's Rates Are Reasonable............................... 15

        2.    Plaintiffs' Fees for the First Improper Removal Are Reasonable ................................................................................... 18

        3.    Plaintiffs' Fees for the Second Improper Removal Are Reasonable ................................................................................... 19

    D.    The Court Should Require DraftKings to Seek Prior Approval Before Removing the Case a Third Time ............................................ 21

IV.   CONCLUSION ................................................................................. 22

1

## <u>TABLE OF AUTHORITIES</u>

2

3

<u>Page(s)</u>

4

### FEDERAL CASES

5

6
*Albion Pac. Prop. Res., LLC v. Seligman*,
   329 F. Supp. 2d 1163 (N.D. Cal. 2004)........................................................15

7

8
*Ansley v. Ameriquest Mortg. Co.*,
   340 F.3d 858 (9th Cir. 2003) ........................................................................7

9

10
*Apilado v. Bank of Am., N.A.*,
   2019 U.S. LEXIS 145454 (D. Haw. Aug. 27, 2019) .........................................11

11
*Avitts v. Amoco Prod. Co.*,
   111 F.3d 30 (5th Cir. 1997) ........................................................................14

12

13
*Bistro Executive, Inc. v. Rewards Network, Inc.*,
   No. 2:04-cv-4640 (C.D. Cal. Nov. 19, 2007) ..............................................17

14

15
*Blattman v. Siebel*,
   No. 15-cv-530 (D. Del. Dec. 6, 2021) ........................................................17

16

17
*Braco v. MCI Worldcom Commc'ns, Inc.*,
   138 F. Supp. 2d 1260 (C.D. Cal. 2001) ........................................................7

18

19
*Breckenridge Prop. Fund 2016, LLC v. Eriks*,
   2018 WL 4772085 (W.D. Wash. Oct. 3, 2018)............................................22

20

21
*Camacho v. Bridgeport Fin., Inc.*,
   523 F.3d 973 (9th Cir. 2008) ......................................................................15

22

23
*Capital2Market Consulting, LLC v. Camston Wrather, LLC*,
   2023 WL 2366975 (S.D.N.Y. Mar. 6, 2023)................................................19

24
*Cleanup N. Brooklyn v. Brooklyn Transfer LLC*,
   373 F. Supp. 3d 398 (E.D.N.Y. 2019)........................................................19

25

26
*CliniComp Int'l, Inc. v. Cerner Corp.*,
   2023 WL 2604816 (S.D. Cal. Mar. 22, 2023)..............................................16

27

28
*CMGRP, Inc. v. Agency for the Performing Arts, Inc.*,
   2016 WL 9080233 (S.D.N.Y. July 8, 2016).................................................19

*Doe ex rel. Hughes v. Martinez*,
    674 F. Supp. 2d 1282 (D.N.M. 2009) ................................................................13

*DraftKings Inc. v. Hermalyn*,
    Civ. A. No. 1:24-cv-10299 (D. Mass.).............................................................5

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
    2017 WL 4685536 (C.D. Cal. May 8, 2017).....................................................16

*Gralnik v. DXC Tech., Inc.*,
    2021 WL 5203333 (C.D. Cal. Nov. 8, 2021) ......................................................8

*Grancare, LLC v. Thrower ex rel. Mills*,
    889 F.3d 543 (9th Cir. 2018).......................................................................7, 11

*Gutierrez v. Wells Fargo Bank, N.A.*,
    2015 WL 2438274 (N.D. Cal. May 21, 2015) ...................................................16

*Harris v. Bankers Life & Cas. Co*,
    425 F.3d 689 (9th Cir. 2005)...........................................................8, 9, 10, 13

*Healthier Choices Mgmt. Corp. v. Philip Morris USA, Inc.*,
    2022 WL 870206 (N.D. Ga. Feb. 22, 2022)......................................................16

*Huizar v. DraftKings*,
    C.D. Cal. No. 2:15-cv-009956-BRO-RAO ........................................................5

*Hyosung TNS, Inc. v. Diebold Nixdorf, Inc.*,
    2021 WL 1597903 (N.D. Tex. Mar. 19, 2021) ..................................................16

*Isaacs v. USC Keck Sch. of Med.*,
    No. 2:19-cv-08000-DSF-RAO (C.D. Cal. May 15, 2020) .................................16

*Johnson v. Columbia Props. Anchorage, LP*,
    437 F.3d 894 (9th Cir. 2006).....................................................................3, 9

*Jordan v. Multnomah Cnty.*,
    815 F.2d 1258 (9th Cir. 1987).......................................................................15

*Kanter v. Warner-Lambert Co.*,
    265 F.3d 853 (9th Cir. 2001) ..........................................................................9

*Lauderdale v. City of Long Beach*,
    2010 WL 11570514 (C.D. Cal. Jan. 11, 2010)..................................................17

*Letner v. Unum Life Ins. Co. of Am.*,
   203 F. Supp. 2d 1291 (N.D. Fla. 2001) ................................................. 13

*Liqwd, Inc. v. L'Oréal USA, Inc.*,
   No. 17-cv-14 (D. Del. Dec. 16, 2019) ................................................. 17

*Lu v. United States*,
   921 F.3d 850 (9th Cir. 2019) ............................................................... 14

*Lussier v. Dollar Tree Stores, Inc.*,
   518 F.3d 1062 (9th Cir. 2008) ............................................................... 9

*Martin v. Franklin Cap. Corp.*,
   546 U.S. 132 (2005) ...................................................................... 7, 14

*McPhatter v. Sweitzer*,
   401 F. Supp. 2d 468 (M.D.N.C. 2005) .................................................. 13

*Mints v. Educ. Testing Serv.*,
   99 F.3d 1253 (3d Cir. 1996) ................................................................ 14

*Molski v. Evergreen Dynasty Corp.*,
   500 F.3d 1047 (9th Cir. 2007) ............................................................. 21

*Moore v. Permanente Med. Grp., Inc.*,
   981 F.2d 443 (9th Cir. 1992) ................................................................. 7

*Nat'l Ass'n v. Orr*,
   2019 WL 2180201 (N.D. Cal. Feb. 28, 2019) ...................................... 22

*NuVasive, Inc. v. Alphatec Holdings, Inc.*,
   2020 WL 6876300 (S.D. Cal. Mar. 20, 2020) ...................................... 16

*Orthopaedic Hosp. v. Encore Med., L.P.*,
   2021 WL 5449041 (S.D. Cal. Nov. 19, 2021) ...................................... 16

*Plush Lounge Las Vegas, LLC v. Lalji*,
   2010 WL 5094238 (C.D. Cal. Dec. 7, 2010) ........................................ 12

*Proofpoint, Inc. v. Vade Secure, Inc.*,
   No. 3:19-cv-4238 (N.D. Cal. Dec. 17, 2020) ....................................... 17

*Redwood Prop. Inv's II, LLC. v. Gaspar*,
   2018 WL 4378756 (N.D. Cal. Feb. 5, 2018) ........................................ 22

*Riverside Cnty. Dept. of Mental Health v. A.S.*,
   No. 5:08-cv-503 (C.D. Cal. Feb. 22, 2010) ........................................................ 17

*Rotella v. Emeritus Corp.*,
   2010 WL 5141857 (N.D. Cal. 2010) ..................................................................... 8

*Schneider v. Roberts*,
   2014 WL 1891416 (C.D. Cal. May 9, 2014) ...................................................... 22

*In re Silberkraus*,
   336 F.3d 864 (9th Cir. 2003) .............................................................................. 10

*Superior Consulting Servs., Inc. v. Steeves-Kiss*,
   2018 WL 2183295 (N.D. Cal. May 11, 2018) .................................................... 16

*Tenner v. Zurek*,
   168 F.3d 328 (7th Cir. 1999) .............................................................................. 14

*TPCO US Holding, LLC v. Fussell*,
   2023 WL 5111986 (N.D. Cal. Aug. 9, 2023) ................................................ 14, 15

*Transweb, LLC v. 3M Innovative Props. Co.*,
   No. 2:10-cv-04413 (D.N.J. Sept. 24, 2013) ........................................................ 17

*Vasquez v. Rackauckas*,
   2011 WL 3320482 (C.D. Cal. July 29, 2011) ..................................................... 17

*Woolsey v. State Farm Gen. Ins. Co.*,
   -- F. Supp. 3d --, 2023 WL 3480870 (C.D. Cal. 2023) ........................................ 7

*Youth Just. Coal. v. City of L.A.*,
   2021 WL 9731621 (C.D. Cal. June 8, 2021) ...................................................... 17

**STATE CASES**

*Application Grp., Inc. v. Hunter Grp., Inc.*,
   61 Cal. App. 4th 881 (1998) ............................................................................... 12

*Charney v. Standard Gen., L.P.*,
   No. BC581130 (L.A. Super. Ct. Sept. 22, 2017) ............................................... 17

*Monster LLC v. Beats Elec. LLC*,
   No. BC595235 (L.A. Sup. Ct. Oct. 12, 2017) .................................................... 17

*Pinter-Brown v. Univ. of Cal. L.A.*,
　No. BC624838, 2018 WL 4041789 (L.A. Super. Ct. Aug. 3, 2018) .................. 15

*Radiological Specialists, Inc. v. Wells Fargo Bank, N.A.*,
　No. 20STCV03336 (L.A. Super. Ct. Dec. 15, 2021) ........................................... 17

**FEDERAL STATUTES**

28 U.S.C. § 1446 ................................................................................................ 8, 10

28 U.S.C. § 1447 ......................................................................................... 1, passim

28 U.S.C. § 1651 ...................................................................................................... 21

28 U.S.C. § 1927 ...................................................................................................... 14

**STATE STATUTES**

Cal. Bus. & Prof. Code § 16600 ........................................................................ 2, 12

Cal. Bus. & Prof. Code § 16600.5 ............................................................................ 2

**RULES**

Fed. R. Civ. P. 11 ......................................................................................... 10, 11, 14

Local Rule 11-9 ....................................................................................................... 14

Local Rule 83-1.3 ...................................................................................................... 5

Local Rule 83-1.3.1 ........................................................................................... 11, 13

Local Rule 83-7 ....................................................................................................... 14

Local Rule 83-8.3 .................................................................................................... 21

MOTION FOR ATTORNEYS' FEES AND COSTS

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.   INTRODUCTION

3

This Motion consolidates Plaintiff Michael Hermalyn and Plaintiff FVP,

4

LLC's requests for attorneys' fees incurred as a result of Defendant DraftKings,

5

Inc.'s two improper removals of Plaintiffs' state court action, one on February 1 and

6

the second on February 5.  Both of DraftKings' removals were objectively

7

unreasonable:  DraftKings attempted the first removal even though no basis for

8

federal jurisdiction appeared on the face of the complaint and apparently without

9

conducting any investigation whatsoever.  Then, the same day that the Court

10

remanded the case and after Mr. Hermalyn filed an application for a TRO in

11

California state court, DraftKings removed *again*, this time alleging that Plaintiffs

12

had perpetrated a fraud on the court by having the temerity to bring valid state law

13

claims on behalf of the corporate entity that employs Mr. Hermalyn in California.

14

As the Court recognized in its remand orders, DraftKings' removals lacked

15

any foundation in law or in fact.  Worse still, DraftKings executed them with

16

apparently complete indifference to their merits, evidently employing removal as a

17

litigation tactic to delay Mr. Hermalyn from being heard on an emergency basis in

18

state court until DraftKings could file its own lawsuit in the District of

19

Massachusetts.  This misconduct warrants, at the least, an award of attorneys' fees

20

under 28 U.S.C. § 1447(c).

21

The fees that Plaintiffs have requested are reasonable.  The rates charged by

22

Plaintiffs' counsel are comparable to the prevailing rates in the Los Angeles legal

23

market for firms of a similar caliber and comparable to the rates charged by

24

DraftKings' counsel, and courts across the country consistently have found those

25

rates reasonable.  The hours expended by Plaintiffs' counsel were also reasonable.

26

DraftKings' litigation tactics required Plaintiffs' counsel to spend virtually an entire

27

week attempting to get their case remanded twice on an emergency basis to the

28

rightful state forum, where each time Mr. Hermalyn was about to seek ex parte

relief.  Because DraftKings concocted a different (though equally baseless) theory to justify its second removal, Plaintiffs were forced to brief two separate remand motions in under a week.  In analogous cases, courts have awarded fees for a comparable number of hours incurred as a result of an improper removal.

Plaintiffs respectfully request that the Court award payment of the attorneys' fees incurred as a result of DraftKings' successive improper removals.  Given DraftKings' obviously strategic use of the removal process and its failure to conduct a good-faith investigation before removing, Plaintiffs also request that the Court enter an order requiring DraftKings to seek approval from this Court before submitting any further filings in federal court.

## II.   **BACKGROUND**

Mr. Hermalyn recently moved to California to accept a job with FVP, LLC (hereafter, "Fanatics VIP"), a California-based affiliate of the digital sports platform Fanatics Holdings, Inc.  (Case No. 2:24-cv-00918, ECF No. 1-5 (Hermalyn Decl. ¶¶ 2-4).)  Mr. Hermalyn's former employer was DraftKings.  While he worked for DraftKings, Mr. Hermalyn was required to sign, as a condition of his employment, nearly a dozen agreements containing broad and onerous post-employment restrictive covenants, which included non-compete, employee non-solicit and no-hire, and client non-solicit provisions.  (*Id.* ¶¶ 12-16 & Exs. A & B.)

After Mr. Hermalyn resigned from DraftKings and accepted his employment offer from Fanatics VIP, Mr. Hermalyn and Fanatics VIP filed suit in California state court to void the anticompetitive restrictions in Mr. Hermalyn's employment contract under black letter California law.  They invoked recent amendments permitting them to seek injunctive relief and other remedies against a former employer like DraftKings to prevent enforcement of the restrictive covenants.  *See* Cal. Bus. & Prof. Code §§ 16600, 16600.5.  That same day, Mr. Hermalyn provided notice to DraftKings of his intention to file an ex parte application for a temporary restraining order.  The ex parte papers were served on DraftKings, and Mr.

1  Hermalyn was clear that he would appear the following morning in state court to
2  seek relief that would allow him to get to work right away.[2]

3       That was over a week ago.  Since then, DraftKings has done everything
4  possible to obstruct and delay Mr. Hermalyn from having his day in a California
5  court.  It has done so while it separately raced to a Massachusetts court to seek a
6  TRO there.

7       **A.     DraftKings' First Improper Removal**

8       First, at 11:50 p.m. on February 1, mere hours after receiving the complaint
9  and Mr. Hermalyn's ex parte papers, and apparently without any investigation,
10  DraftKings served Plaintiffs with a Notice of Removal invoking the Court's
11  diversity jurisdiction.  (Case No. 2:24-cv-00918, ECF No. 1 at 8.)  The Notice
12  alleged that there was complete diversity of citizenship between the parties because
13  "Hermalyn is a citizen of New Jersey, (or, according to him, California), Fanatics
14  VIP is a citizen of California, and DraftKings is a citizen of Nevada and
15  Massachusetts."  (*Id.* at 9.)

16       The allegation concerning Fanatics VIP's citizenship was false.  Fanatics VIP
17  is a limited liability company, and for purposes of diversity jurisdiction, "an LLC is
18  a citizen of every state of which its owners/members are citizens."  *Johnson v.*
19  *Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  Fanatics VIP's
20  sole member, FVP, Inc., is a Nevada corporation, which makes Fanatics VIP a
21  citizen of Nevada.  (Case No. 2:24-cv-00918, ECF No. 12-1 (Winiarski Decl. ¶¶ 6-

22
23

24  _____
   [2] The following morning, Mr. Hermalyn's counsel received notice from the
25  California Superior Court's filing service that the ex parte application had been
   rejected.  (Case No. 2:24-cv-00997, ECF No. 1-24 at 22.)  By that time, however,
26  DraftKings had already removed the case and divested the Superior Court of
   jurisdiction in any event, depriving Mr. Hermalyn of the opportunity to seek an
27  expedited TRO.
28

7).)  Because DraftKings and Fanatics VIP are both Nevada citizens, there was not complete diversity between the parties.

Mr. Hermalyn's counsel asked DraftKings to stipulate to a remand, explaining that "time is of the essence" because of Mr. Hermalyn's urgent need for relief from the California court.  (Case No. 2:24-cv-00997, ECF No. 1-24.) DraftKings refused.  Plaintiffs then proceeded to seek expedited remand from the Court by filing papers that day.

Those papers required a tremendous amount of work to put together.  The Motion to Remand alone was a 20-page document that cited 22 cases and several other legal authorities.  The motion was accompanied by the ex parte application, which required its own research, and additional supporting declarations that took time and effort to draft.  There were six attorneys from Munger, Tolles, & Olson and five from Quinn Emanuel who quickly jumped into the fray, working on declarations, satisfying meet-and-confer obligations, reviewing local rules, and researching the substantive law.  They then prepared the actual motions and supporting documents, all in a single day's time.  By about 5:30 p.m. that same evening, February 2, 2024, Plaintiffs had filed their Motion to Remand and Ex Parte Application to Shorten Time.  All told, those filings comprise approximately 40 pages.  Over the following days, the team drafted a reply brief (that was ultimately not filed due to the Court's remand) and prepared for a possible hearing.

On February 5, the Court remanded the case.  (Case No. 2:24-cv-00918, ECF No. 14.)  The Court's order noted that its lack of subject matter jurisdiction was "clear and inarguable" because DraftKings had "not offer[ed] facts probative of the citizenship of FVP's owner or members" and had accordingly failed to carry its burden to establish grounds for removal.  (*Id.*)

### B.    DraftKings' Second Improper Removal

Mr. Hermalyn moved quickly to refile his state court papers the same day. Refiling required substantial effort.  Counsel had to revise the papers to reflect the

-4-

1    removal and remand, provide new notice, satisfy additional meet-and-confer

2    obligations, and draft new supporting declarations substantiating Mr. Hermalyn's

3    compliance with state court procedures for ex parte relief.  (*See* Case No. 2:24-cv-

4    00997, ECF No. 1-22 through 26.)

5          Faced again with the imminent prospect that Mr. Hermalyn could be heard in

6    state court, DraftKings removed the case *again*, in the middle of the night (1:15

7    a.m.), fewer than 24 hours after the Court had remanded it.  There were no factual

8    developments or changes in circumstances between the first and second removals:

9    DraftKings simply did not agree with the Court's remand or, more likely, did not

10   care, as it was desperate to avoid California state court and buy more time to file in

11   Massachusetts.

12         In effecting this second removal, DraftKings failed to file a Notice of Related

13   Case, as required by Local Rule 83-1.3.  The requirement to notify the District Court

14   of an obviously related case is hardly an obscure rule; sophisticated counsel are

15   surely aware of it.  Indeed, a search of the Central District of California's docket

16   reveals *many* instances of DraftKings' counsel's firm filing or receiving Notices of

17   Related Cases in this District.  (Kristovich Decl. ¶ 3, Ex. B.)  Both Counsels Smith

18   and Fogelman have individually filed Notices of Related Cases along with Notices

19   of Removal from state court—and Counsel Fogelman did so while representing

20   DraftKings.  (*Id.* ¶¶ 3–7, Exs. B-D (docket search results), Ex. E (*Huizar v.

21   DraftKings*, C.D. Cal. No. 2:15-cv-009956-BRO-RAO, ECF No. 1), Ex. F

22   (*Childress v. Ford Motor Company*, C.D. Cal. No. 5:23-cv-01949-JWH-SHK, ECF

23   No. 1).)  One is left to conclude that the failure to file the Notice in this case was

24   designed to (and did) slow down remand.  In fact, DraftKings bought itself enough

25   time by filing the second improper removal to file a lawsuit in Massachusetts that

26   same day, seeking a TRO and expedited discovery.  *DraftKings Inc. v. Hermalyn*,

27   Civ. A. No. 1:24-cv-10299 (D. Mass.).  Meanwhile, because of the removal, Mr.

28   Hermalyn was unable to seek relief in California state court.

1    DraftKings' second Notice of Removal offered a new theory, rife with

2  inflammatory allegations: that Plaintiffs had perpetrated a "fraud on the Court" by

3  bringing state-law claims on behalf of Fanatics VIP, which DraftKings alleged was

4  a "sham."  (Case No. 2:24-cv-00997, ECF No. 1 at 6.)  Specifically, DraftKings

5  alleged—again, without evidence—that Plaintiffs had committed actual fraud in the

6  pleading of jurisdictional facts because Fanatics VIP had been formed only recently,

7  to employ Mr. Hermalyn and as a vehicle to expand Fanatics' California operations.

8  (*Id.*)

9    Plaintiffs again sought expedited relief from this Court.  (Case No. 2:24-cv-

10  00997, ECF Nos. 8, 10.)  Plaintiffs prepared a second Motion to Remand addressing

11  DraftKings' new arguments, explaining that the "sham" label was inapplicable to

12  this context and that no law prohibits a party from organizing itself to take

13  advantage of favorable state law.  (*See, e.g.*, Case No. 2:24-cv-00997, ECF No. 8 at

14  9-13.)  DraftKings opposed and submitted a supplemental opposition, requiring

15  Plaintiffs to prepare two reply briefs.  (*Id.*, ECF Nos. 10 & 15 (oppositions), 11 and

16  16 (replies).)

17    On February 8, the Court remanded the case on its own motion—again.

18  (Case No. 2:24-cv-00997, ECF No. 19.)  The Court rejected DraftKings' fraud

19  theory, observing that DraftKings had relied entirely on "speculation,"

20  "conjecture[,] and invective" but had "offer[ed] no evidence" of fraud, "no evidence

21  of untoward acts" by Plaintiffs, and "[n]o facts" to support its arguments.  (*Id.*)

22    In both remand orders, the Court retained jurisdiction to consider a motion to

23  recover fees and costs under 28 U.S.C. § 1447(c).  Plaintiffs attempted to meet and

24  confer with DraftKings to resolve the issue by stipulation, but the parties were

25  unable to come to a resolution.  (Kristovich Decl. ¶ 2.)

26

27

28

## III.   <u>ARGUMENT</u>

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.  An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).

The standard for awarding fees under § 1447(c) "turns on the reasonableness of the removal."  *Woolsey v. State Farm Gen. Ins. Co.*, -- F. Supp. 3d --, 2023 WL 3480870, at *4 (C.D. Cal. 2023).  A court may award costs and fees "where the removing party lacked an objectively reasonable basis for seeking removal."  *Grancare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 552 (9th Cir. 2018).  District courts have "wide discretion" in awarding fees, and they may do so if the removal was "wrong as a matter of law."  *Ansley v. Ameriquest Mortg. Co.*, 340 F.3d 858, 864 (9th Cir. 2003).  An award on remand "is not a punitive award against defendants; it is simply reimbursement to plaintiffs of wholly unnecessary litigation costs the defendant inflicted."  *Moore v. Permanente Med. Grp., Inc.*, 981 F.2d 443, 447 (9th Cir. 1992).  Accordingly, the decision to award fees does not require a finding of bad faith.  *Id.* at 446.

"Although bad faith is not a prerequisite to awarding fees, '[t]he nature of the conduct of the removing defendant[] is nevertheless relevant to the exercise of discretion.'"  *Braco v. MCI Worldcom Commc'ns, Inc.*, 138 F. Supp. 2d 1260, 1270-71 (C.D. Cal. 2001) (citations omitted).  Because an improper removal "delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources," assessing fees on remand is warranted to deter removals sought for those purposes, provided the award would not "undermin[e] Congress' basic decision to afford defendants a right to remove."  *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 140 (2005).

A.      **DraftKings' Removals Lacked an Objectively Reasonable Basis**

1.      **The First Removal Was Patently Deficient Under Law It Cited and Done Without Any Investigation Whatsoever**

DraftKings' first removal was unreasonable because it was done without any legal basis, without any reasonable investigation of the relevant jurisdictional facts, and for an improper motive.

"[N]otice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings." *Harris v. Bankers Life & Cas. Co*, 425 F.3d 689, 694 (9th Cir. 2005). The Ninth Circuit has recognized that "diversity of citizenship is a federal, not a state, concern," so "it is not uncommon for a state court pleading to omit the necessary facts needed to determine diversity." *Id.* at 693. "If no ground for removal is evident in [an initial] pleading, *the case is 'not removable' at that stage*." *Id.* at 694 (emphasis added); *see also* 28 U.S.C. § 1446(b)(3). When faced with a case that is not removable due to an indeterminate pleading, the defendant's proper recourse is to conduct an investigation into the jurisdictional facts—whether independently or by seeking discovery—while the case remains pending in state court. *Gralnik v. DXC Tech., Inc.*, 2021 WL 5203333, at 6 (C.D. Cal. Nov. 8, 2021) (quoting *Rotella v. Emeritus Corp.*, 2010 WL 5141857, at *5 n.1 (N.D. Cal. 2010)). "By assuring that removal occurs once the jurisdictional facts supporting removal are evident," federal courts "ensure respect for the jurisdiction of state courts." *Harris*, 425 F.3d at 698.

DraftKings' Notice of Removal demonstrated a flagrant disregard for these principles. Plaintiffs' complaint did not include any allegations about the citizenship of Fanatics VIP—nor was it required to, as diversity of citizenship is not a state concern. *Harris*, 425 F.3d at 694. Without that information, DraftKings could not have determined from the face of the pleadings whether the case was removable because it could not have ascertained the citizenship of one of the parties.

1       DraftKings ignored the bright-line rule from *Harris* in its rush to delay Mr.

2   Hermalyn's state proceedings at all costs.  DraftKings did not offer any explanation

3   for its purported view that Fanatics VIP was a citizen only of California.

4   DraftKings evidently knew the rules:  Its Notice acknowledged that Fanatics VIP is

5   an LLC and cited *Johnson v. Columbia Properties Anchorage, LP* for the

6   proposition that "an LLC is a citizen of every state of which its owners/members are

7   citizens."  (ECF No. 1 at 9 (Case No. 2:24-cv-00918).)  And yet, the Notice made no

8   allegations about Fanatics VIP's owners or members.  The conclusion that

9   DraftKings knew the parties may not be diverse and chose to remove anyway is

10  inescapable.  That is not how removal is supposed to work.  *Harris*, 425 F.3d at 694.

11  Because "the relevant case law clearly foreclosed the defendant's basis of removal,"

12  the removal was objectively unreasonable.  *Lussier v. Dollar Tree Stores, Inc.*, 518

13  F.3d 1062, 1066 (9th Cir. 2008).

14      The Court's prompt order recognized this basic defect in DraftKings' Notice.

15  The Court noted that "a party seeking to invoke diversity jurisdiction should be able

16  to allege affirmatively the actual citizenship of the relevant parties," and that

17  DraftKings had "not offer[ed] facts probative of the citizenship of FVP's owners or

18  members" under *Johnson*.  (Case No. 24-cv-00918, ECF No. 14 at 1-2 (citing

19  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).)  Because

20  DraftKings failed to establish (or do anything to obtain) the information necessary to

21  establish the citizenship of Fanatics VIP, it failed to carry its burden on removal.

22  (*Id.* at 2.)

23      The lack of a legal basis for removal alone warrants an award of fees.  But

24  DraftKings' conduct only underscores why relief is appropriate.  DraftKings

25  neglected to undertake the most basic investigation into the jurisdictional facts.  It

26  did not even reach out to Plaintiffs to inquire about the citizenship of Fanatics VIP.

27  It simply removed in the middle of the night before Plaintiffs could be heard in state

28  court the following morning.  The morning after the removal, it was *Plaintiffs* who

1   sought to meet and confer to redress the situation without wasting the parties' and

2   the court's resources.  Plaintiffs explained that Fanatics VIP "is a Nevada citizen";

3   asked whether DraftKings "need[ed] more information"; and requested that

4   "DraftKings stipulate to remand of the proceedings" because "time is of the

5   essence."  (Case No. 2:24-cv-00997, ECF No. 1-24 (Conley Decl. Ex. C).)

6   DraftKings' counsel did not respond, and Plaintiffs were forced to seek emergency

7   relief.

8        Fundamentally, DraftKings' removal was improper under *Harris*.  But even

9   after learning about the citizenship of Fanatics VIP—including through the sworn

10   declaration submitted with Plaintiffs' remand papers—DraftKings refused to

11   stipulate to a remand.  (Case No. 2:24-cv-00997, ECF No. 1-24 (Conley Decl. Ex.

12   C).)  Instead, DraftKings sought to impose further delays, saying it would oppose

13   remand, demanding documents about Fanatics VIP's corporate structure, and

14   declining to say why it had failed to investigate the citizenship of the parties before

15   removing the case a mere nine hours after receiving the complaint.  (*Id.*)

16        The reason DraftKings refused to promptly correct its deficient removal is

17   clear.  For DraftKings, the merits of the removal were irrelevant.  Its decision to

18   remove was reflexive and strategic—a tactic to delay the pending state court

19   proceedings, deny Mr. Hermalyn his opportunity to be heard ex parte in state court

20   the day after filing his complaint, and buy time to institute its own proceedings for

21   emergency relief in another forum.  In similar circumstances, courts have

22   determined this kind of conduct to be not just objectively unreasonable, but

23   sanctionable.  *Cf. In re Silberkraus*, 336 F.3d 864, 871 (9th Cir. 2003) (upholding

24   the imposition of sanctions, where filing a bankruptcy petition days before an

25   important state court deadline to trigger an automatic stay amounted to "bad faith");

26   *see also* 28 U.S.C. § 1446(a) (notice of removal must be "signed pursuant to Rule

27   11"); *Harris*, 425 F.3d at 697 (the rule that removability is determined from the face

28

of the pleadings should alleviate "pressure to file a premature notice of removal" that "may lead to the imposition of Rule 11 sanctions").

### 2. The Second Removal Was Executed Without Facts or Evidence and Similarly Sought Only to Delay the Pending State Court Proceedings

DraftKings' second attempt at removal was equally strategic—and equally baseless.  To start, DraftKings removed within hours of receiving the Court's remand order, again in the middle of the night and after being served with ex parte papers for a state court hearing.  DraftKings did not consult with Plaintiffs regarding its new harebrained theory of removability and apparently did not investigate whether the theory had a basis in law.  DraftKings also failed to file the required Notice of Related Case that would have immediately alerted the Court of this second removal, mere hours after the Court's remand order.  *See* C.D. Cal. Local Rule 83-1.3.1.  Relying on overheated rhetoric and sensational allegations, the Notice of Removal accused Plaintiffs of perpetrating "the most egregious attempt to fraudulently circumvent diversity jurisdiction that counsel has ever seen."  (Case No. 2:24-cv-00997, ECF No. 1 at 9.)  But again, DraftKings' invective lacked any actual support in law or in fact and appears to have been undertaken for improper purposes.

*First*: DraftKings relied on the "fraudulent joinder" doctrine—but that doctrine applies to non-diverse *defendants* who have been joined to destroy diversity.  The doctrine has not been extended in the Ninth Circuit to purportedly fraudulently joined plaintiffs.  *See Apilado v. Bank of Am., N.A.*, 2019 U.S. LEXIS 145454, at *7-10 (D. Haw. Aug. 27, 2019) (noting that "Ninth Circuit cases addressing the doctrine apply it exclusively to defendants").

*Second,* and more significantly:  Even assuming DraftKings had a good faith legal argument for expanding the doctrine, the Notice of Removal relied entirely on unsupported speculation, falling far short of the applicable standard for fraudulent joinder.  *See Grancare, LLC*, 889 F.3d at 548.

Fanatics VIP was created so that Fanatics could employ Mr. Hermalyn as the head of its Los Angeles office and oversee "the planned consolidation of the greater Los Angeles-area offices . . . into a single location." (Case No. 2:24-cv-00918, ECF No. 1-5 (Hermalyn Decl. ¶ 7).) There is nothing untoward about a company structuring itself to take advantage of favorable state law. DraftKings cited no authority for the proposition that locating a subsidiary in a particular jurisdiction for that purpose constitutes fraud. *Cf. Plush Lounge Las Vegas, LLC v. Lalji*, 2010 WL 5094238, at *4 (C.D. Cal. Dec. 7, 2010) ("[I]t would require a quantum leap in logic to conclude from [the fraudulent/collusive assignment of claim doctrine] that [a court] can examine the motivation behind the assignment of an interest in an LLC (or the addition of a diversity destroying new member into the LLC."). Nor is it unusual for a new corporate entity to be formed concurrently with organizational and leadership changes. And it is undisputed that Fanatics VIP is, in fact, Mr. Hermalyn's employer and, as such, possesses a valid claim against DraftKings under California law. *See* Cal. Bus. & Prof. Code §§ 16600, 16600.5; *Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 902 (1998).

While DraftKings accused Plaintiffs of fraud in the pleading of jurisdictional facts, that accusation was founded on nothing more than "conjecture and invective." (Case No. 2:24-cv-00997, ECF No. 19 at 2.) As the Court recognized in its order:

> Beyond speculation, Defendant offers <u>no evidence of fraud</u>. It supposes that a nascent company can have no headquarters, can employ no people, and can maintain no business relationships. <u>No facts support these arguments</u>, which blissfully ignore the possibility that FVP may have inherited these components of its business from a predecessor organization. Defendant offers <u>no evidence of untoward acts</u> by FVP that might support a finding of fraud . . . .

(Case No. 2:24-cv-00997, ECF No. 19 at 2 (emphasis added).) The Court recognized that "Plaintiffs have not falsely pleaded anything bearing on jurisdiction in federal court," as they did not plead "*anything* about FVP's citizenship." (*Id.* at

3.)  Again, Plaintiffs were not required to do so, since they did not bring their claims in federal court.  *See Harris*, 425 F.3d at 693.  Although it hardly bears saying, it is objectively unreasonable for a party to remove based purely on "conjecture and invective," with "no evidence" and "[n]o facts" to support its position.  (*Id.*)

*Finally*:  The failure to file a Notice of Related Case suggests that DraftKings wanted to avoid the case being reassigned to this Court quickly.  Local Rule 83-1.3.1 requires the filing of such a notice.  And it is not an arcane rule:  DraftKings' counsel is on record as having filed or received many such notices, and DraftKings' counsel in this case have filed Notices of Related Case on the same day as Notices of Removal.  (*See* Kristovich Decl. ¶¶ 6-7, Exs. E-F.)

## B.   Because Both Removals Were Objectively Unreasonable, Attorneys' Fees Are Warranted

In executing both improper removals, DraftKings has demonstrated indifference to the merits of its legal theories and factual allegations and has evidently sought removal only as a ploy for delay.  Fees are warranted under 28 U.S.C. § 1447(c) because these removals were objectively unreasonable.  *See, e.g.*, *Doe ex rel. Hughes v. Martinez*, 674 F. Supp. 2d 1282, 1286 (D.N.M. 2009) (attorney's refusal to dismiss the case after the improper removal was brought to his attention "is the type of abusive litigation practice" that warrants an award of attorneys' fees under 28 U.S.C. § 1927); *McPhatter v. Sweitzer*, 401 F. Supp. 2d 468, 479 (M.D.N.C. 2005) (awarding fees where defendants "forced Plaintiffs to come to federal court for a second time, which has complicated, delayed, and increased the cost of their state court action" and where the "support for the Second Removal was weak, and was not substantially different from that offered by Defendants in support of their first removal"); *Letner v. Unum Life Ins. Co. of Am.*, 203 F. Supp. 2d 1291, 1302 (N.D. Fla. 2001) (awarding fees where the case "was removed without a scintilla of legitimate evidence that would support the exercise of federal jurisdiction").

Further, there are many tools at the Court's disposal to address DraftKings' disturbing litigation conduct, all of which allow for the imposition of fees in this case. *See, e.g.*, Fed. R. Civ. P. 11(c)(3) (permitting sanctions on the court's own motion); *Lu v. United States*, 921 F.3d 850, 859 (9th Cir. 2019) (recognizing the "inherent powers" of federal courts to "fashion an appropriate sanction for conduct which abuses the judicial process" (internal quotation marks omitted)); 28 U.S.C. § 1927 (authorizing sanctions against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously"); C.D. Cal. Local Rule 11-9 (noting "frivolous motions . . . subject[] the offender at the discretion of the Court to the sanctions of L.R. 83-7"); C.D. Cal. Local Rule 83-7 (providing for monetary sanctions for "willful, grossly negligent, or reckless" conduct in violation of the rules and "imposition of costs and attorneys' fees to opposing counsel" where conduct "rises to the level of bad faith and/or a willful disobedience of a court order"). Because DraftKings' improper removals "delay[ed] resolution of the case, impose[d] additional costs on both parties, and waste[d] judicial resources," assessing fees on remand is warranted. *Martin*, 546 U.S. at 140. As discussed below, the requested pre-filing restriction is also appropriate. *See infra*, at 21-22.

## C.     The Attorneys' Fees Sought by Plaintiffs Are Reasonable

"Under § 1447(c), expenses may be incurred by parties as soon as the process of removal is undertaken and until and including the process of remand." *Tenner v. Zurek*, 168 F.3d 328, 330 (7th Cir. 1999). "[A] party's costs of opposing removal, seeking remand, and other expenses incurred because of the improper removal may be awarded." *Avitts v. Amoco Prod. Co.*, 111 F.3d 30, 32 (5th Cir. 1997). "Such costs and fees could include items distinct from those incurred on a motion to remand." *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1259 (3d Cir. 1996).

"Section 1447(c) has been recognized as a fee-shifting statute, and in the Ninth Circuit, under a fee-shifting statute, the court must calculate awards for attorneys' fees using the lodestar method." *TPCO US Holding, LLC v. Fussell*,

2023 WL 5111986, at *1 (N.D. Cal. Aug. 9, 2023) (cleaned up). "The lodestar is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* (internal quotation marks omitted). "Because the lodestar figure is presumptively reasonable, adjustments should be made only in rare cases." *Albion Pac. Prop. Res., LLC v. Seligman*, 329 F. Supp. 2d 1163, 1167 (N.D. Cal. 2004).

Based on the lodestar method, and as set forth in the accompanying Declarations of Brad D. Brian and David C. Armillei, Plaintiffs seek an award of $193,326 in attorneys' fees for the first removal and $117,278 in attorneys' fees for the second removal. For the reasons discussed below, and as supported by the declarations, these fees were reasonably and necessarily incurred as a result of DraftKings' objectively unreasonable removals.

### 1. Plaintiffs' Counsel's Rates Are Reasonable

In determining the reasonable hourly rate of an attorney, the Court must look to the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); *see also Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987) ("[t]he prevailing market rate in the community is indicative of a reasonable hourly rate.").

Plaintiffs' request is based on reasonable hourly rates. The qualifications of Plaintiffs' counsel are set forth in the accompanying declarations along with their rates charged in this litigation. (Brian Decl. ¶¶ 3, 14; Armillei Decl. ¶¶ 3, 14.) While the rates for individual attorneys vary, the weighted average rate for this fee request is about $1279 per hour. That rate is squarely within the billing rates approved as reasonable by a number of Los Angeles courts. As courts have recognized, attorney billing rates have exceeded $1,000 per hour in the Los Angeles legal market since at least 2013. *See, e.g.*, Order (re Attorneys' Fees), *Pinter-Brown v. Univ. of Cal. L.A.*, No. BC624838, 2018 WL 4041789, at *6 (L.A. Super. Ct.

Aug. 3, 2018).  And, as is typical in the legal industry, Plaintiffs' counsel's firms both have a general practice of adjusting standard rates each year, taking into account a variety of factors including available market data concerning rates charged by peer firms.  (Brian Decl. ¶ 13; Armillei Decl. ¶ 13.)  Courts have regularly found comparable rates to be reasonable based on the market and the skill, experience, and representation of counsel.  *See, e.g.*, *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.,* 2017 WL 4685536, at *8 (C.D. Cal. May 8, 2017) (hourly rate of $1200 was reasonable, based on the skill and experience of the attorneys).[3]  Moreover, Plaintiffs understand that DraftKings' counsel at Gibson Dunn & Crutcher charges rates within the same range as Plaintiffs' counsel.  *See Isaacs v. USC Keck Sch. of Med.*, No. 2:19-cv-08000-DSF-RAO, ECF No. 12 (C.D. Cal. May 15, 2020) (finding Gibson, Dunn & Crutcher's 2020 rates, including Mr. Fogelman's rate of $1350 per hour, were reasonable and "within the range charged in the local market for attorneys of comparable quality and size.").

---

[3] *See, e.g.*, *Orthopaedic Hosp. v. Encore Med., L.P.*, 2021 WL 5449041, at *13 (S.D. Cal. Nov. 19, 2021) (finding $1,260 for partners and $1,065 for associates reasonable); *CliniComp Int'l, Inc. v. Cerner Corp.*, 2023 WL 2604816, at *3–5 (S.D. Cal. Mar. 22, 2023) ($1,465 for partners and $805 for associates); *NuVasive, Inc. v. Alphatec Holdings, Inc.*, 2020 WL 6876300, at *3 (S.D. Cal. Mar. 20, 2020) ($1,005 and $860 for partners); *Superior Consulting Servs., Inc. v. Steeves-Kiss*, 2018 WL 2183295, at *5 (N.D. Cal. May 11, 2018) ($975 per hour for partners); *Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (same); *Healthier Choices Mgmt. Corp. v. Philip Morris USA, Inc.*, 2022 WL 870206, at *4 (N.D. Ga. Feb. 22, 2022) ($1,318 for partners and $935 for associates), *vacated on other grounds*, 65 F.4th 667; *Hyosung TNS, Inc. v. Diebold Nixdorf, Inc.*, 2021 WL 1597903, at *2 & n.2 (N.D. Tex. Mar. 19, 2021) ($950 per hour).

Courts across the country have repeatedly and consistently held that the hourly rates of Munger, Tolles & Olson[4] and Quinn Emanuel[5] are reasonable, based

---

[4] *Youth Just. Coal. v. City of L.A.*, 2021 WL 9731621, at *6 (C.D. Cal. June 8, 2021) (awarding fees including Munger Tolles billing rates of $1,050 per hour); *Vasquez v. Rackauckas*, 2011 WL 3320482, at *1 (C.D. Cal. July 29, 2011) ("the rates sought and approved are within the range of reasonable market rates for attorneys of comparable skill, experience and reputation"); *Lauderdale v. City of Long Beach*, 2010 WL 11570514, at *14 (C.D. Cal. Jan. 11, 2010) (awarding fees and finding Munger Tolles attorneys' "hourly rates [were] reasonable"); *Radiological Specialists, Inc. v. Wells Fargo Bank, N.A.*, No. 20STCV03336 (L.A. Super. Ct. Dec. 15, 2021) (holding Munger Tolles billing rates were "in line with general market rates"); *Monster LLC v. Beats Elec. LLC*, No. BC595235 (L.A. Sup. Ct. Oct. 12, 2017) (affirming Munger Tolles fees request with billing rates of $1,245 per hour; noting that the court was "very familiar with the hourly rates of attorneys in Los Angeles, including those of the most experienced business litigation firms such as Munger Tolles" and holding that the "rates charged here are well within the current range of those in similarly situated firms for litigation of this nature"); *Charney v. Standard Gen., L.P.*, No. BC581130 (L.A. Super. Ct. Sept. 22, 2017) (awarding all requested fees including Munger Tolles attorney billing rates).

[5] *Blattman v. Siebel*, No. 15-cv-530 (D. Del. Dec. 6, 2021) (ECF No. 434) (finding attorneys' fees requested by Quinn Emanuel reasonable and declining to reduce the fee award by the requested percentage); *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 3:19-cv-4238 (N.D. Cal. Dec. 17, 2020) (ECF No. 376 at 7) (finding that Quinn Emanuel attorneys "are experienced and seasoned practitioners; that they are employed at a large international firm with a highly regarded reputation; that they have highly specialized . . .backgrounds" and that the firm's fees are reasonable); *Liqwd, Inc. v. L'Oréal USA, Inc.*, No. 17-cv-14 (D. Del. Dec. 16, 2019) (ECF No. 1162 at 25-28) (finding that Quinn Emanuel's "hourly rates and [ ] hours spent [are] reasonable"); *Transweb, LLC v. 3M Innovative Props. Co.*, No. 2:10-cv-04413 (D.N.J. Sept. 24, 2013) (ECF No. 567 at 33) (Special Master's ruling finding that Quinn Emanuel was a "premier litigation firm" and that "the hourly rates charged by Quinn Emanuel are within the range of prevailing rates for premium quality counsel"); *Riverside Cnty. Dept. of Mental Health v. A.S.*, No. 5:08-cv-503 (C.D. Cal. Feb. 22, 2010) (ECF No. 123) (awarding full amount of attorneys' fees sought for work performed by Quinn Emanuel); *Bistro Executive, Inc. v. Rewards Network, Inc.*, No. 2:04-cv-4640 (C.D. Cal. Nov. 19, 2007) (ECF No. 357 at 6-8) (finding Quinn Emanuel's attorney and staff rates and hours were reasonable).

-17-

on the qualifications of their attorneys, and comparable to rates charged by firms providing similarly high-quality representation.

### 2.   Plaintiffs' Fees for the First Improper Removal Are Reasonable

For the first removal, Plaintiffs seek $193,326 in attorneys' fees. This amount accounts for almost 150 hours spent by 9 attorneys on work in the federal court.

The hours spent opposing DraftKings' attempt to remand the case were reasonable. As explained in the supporting declarations, the hours expended reflect the following categories of tasks, all of which were directly related to DraftKings' efforts to remove the case:

a) reviewing the First Notice of Removal and supporting documents;

b) meet-and-confer correspondence explaining to DraftKings why removal was improper and attempting to obtain a stipulation to a remand;

c) preparing case-initiating documents, such as the notice of interested parties, that are required in federal court;

d) researching, drafting, and filing the ex parte application to shorten time;

e) researching, drafting, and filing the motion for remand;

f) preparing for a potential argument on the ex parte application and/or motion to remand;

g) researching and drafting a reply brief that was not filed before the Court issued its remand order; and

h) internal correspondence and conferences regarding the strategy and substance of this response.

(Brian Decl. ¶¶ 8-9; Armillei Decl. ¶¶ 8-9.)

As this list demonstrates, the hours expended by Plaintiffs' counsel were necessary because of DraftKings' litigation tactics. DraftKings repeatedly refused to resolve these issues by stipulation or through the meet-and-confer process, and

-18-

instead insisted on opposing Plaintiffs' efforts to remand the case to the rightful state forum.  The response was made more complicated by DraftKings' middle-of-the-night removal, mere hours before Mr. Hermalyn expected to be heard in state court on his ex parte application for emergency relief.  (Brian Decl. ¶ 7; Armillei Decl. ¶ 7.)  Plaintiffs were required to spend time researching the fastest possible way to obtain relief in federal court and return to state court, while coordinating across the separately represented Plaintiffs here.  (*Id.*)  The reasonableness of Plaintiffs' fee request is also supported by the fact that Plaintiffs have not included in their request significant amounts of time spent on this litigation—namely, time spent solely on revising and resubmitting Mr. Hermalyn's state court papers.  (Brian Decl. ¶ 5; Armillei Decl. ¶ 5.)

The requested fee is comparable to awards granted by other courts for time spent litigating improper removals.  *See, e.g.*, *Cleanup N. Brooklyn v. Brooklyn Transfer LLC*, 373 F. Supp. 3d 398 (E.D.N.Y. 2019) (awarding total fees and costs for about 350 actual hours—reduced by the court to 230 hours of compensable time); *CMGRP, Inc. v. Agency for the Performing Arts, Inc.*, 2016 WL 9080233, at *1 (S.D.N.Y. July 8, 2016) (awarding fees for about 200 hours of attorney time incurred as a result of a single improper removal); *Capital2Market Consulting, LLC v. Camston Wrather, LLC*, 2023 WL 2366975, at *8 (S.D.N.Y. Mar. 6, 2023) (awarding attorneys' fees and sanctions for about 100 hours of attorney work incurred as a result of an improper removal).  Here, because much of the work had to be done in essentially a day, it was an "all hands" task that required a significant number of attorneys pitching in.

### 3.    Plaintiffs' Fees for the Second Improper Removal Are Reasonable

For the second removal, Plaintiffs seek $117,278 in attorneys' fees.  This amount accounts for just over 90 hours spent by 8 attorneys on work in the federal court.

The hours spent opposing DraftKings' *second* attempt to remove the case were also reasonable. As explained in the supporting declarations, the hours expended reflect the following categories of tasks, all of which were directly related to DraftKings' efforts to remove the case a second time:

a) reviewing the Second Notice of Removal and supporting documents;

b) preparing the Notice of Related Case to inform the Court—as DraftKings failed to do—that the identical case had been removed again, the same day it had just been remanded;

c) researching, drafting, and filing a second ex parte application to shorten time, this time under the emergency rules;

d) researching, drafting, and filing the second motion for remand, this time addressing DraftKings' new baseless but complicated legal theory;

e) reviewing DraftKings' opposition to the remand motion, and researching, drafting, and filing a reply;

f) reviewing DraftKings' supplemental opposition to the remand motion, and researching, drafting, and filing a reply;

g) preparing for a second potential argument on the ex parte application and/or motion to remand; and

h) internal correspondence and conferences regarding the strategy and substance of this response.

(Brian Decl. ¶¶ 10-11; Armillei Decl. ¶¶ 10-11.)

This list demonstrates that the hours expended by Plaintiffs' counsel were a necessary response to DraftKings' improper tactics. Plaintiffs' second set of filings was not a simple refresh of its first set of federal papers. In its second Notice of Removal, DraftKings advanced new arguments that required Plaintiffs to do additional research and draft wholly new briefs and supporting materials. (Brian Decl. ¶ 10; Armillei Decl. ¶ 10.) Plaintiffs also filed a "supplemental" opposition that required a further reply, and Plaintiffs failed to file a Notice of Related Case,

1  necessitating additional work to ensure that the second removal was related to the
2  first.  The fees sought for this second removal are comparable to those incurred as a
3  result of the first, and for the same reasons, represent reasonable compensation for
4  the time spent as a result of DraftKings' unnecessary and vexatious tactics.

5      **D.    The Court Should Require DraftKings to Seek Prior Approval**
       **Before Removing the Case a Third Time**
6

7          DraftKings' successive, baseless removals constitute an abuse of process,
8  undertaken for the improper purpose of preventing Mr. Hermalyn from seeking
9  immediate relief in state court.  As of the filing of this brief, Mr. Hermalyn *still* has
10  not had an opportunity to be heard on an application for emergency relief that he
11  attempted to file *over a week ago*.  Meanwhile, DraftKings' removals have achieved
12  exactly what they were designed to do—hamstring Mr. Hermalyn while DraftKings
13  raced to file its own lawsuit, and obtain its own temporary injunction, in another
14  forum.

15          Plaintiffs ask that DraftKings be prevented from engaging in this conduct
16  again.  Under the All Writs Act, 28 U.S.C. § 1651(a), this Court has authority to
17  enter a pre-filing order requiring DraftKings to obtain permission before attempting
18  additional removals of Plaintiffs' state-court case.  *Molski v. Evergreen Dynasty*
19  *Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007).  Plaintiffs believe that such an order is
20  warranted, given the "frivolous" and "harassing nature" of DraftKings' actions thus
21  far in the litigation.  *Id.*; *see also* C.D. Cal. Local Rule 83-8.3 (authorizing pre-filing
22  order where a litigant has "abused the Court's process and is likely to continue such
23  abuse, unless protective measures are taken").  Courts have entered similar orders in
24  the past to prevent litigants from effecting successive improper removals.  *U.S. Bank*
25  *Nat'l Ass'n v. Orr*, 2019 WL 2180201, at *1 (N.D. Cal. Feb. 28, 2019), *adopting R.*
26  *& R.*, 2019 WL 2183369 (N.D. Cal. Feb. 7, 2019); *Breckenridge Prop. Fund 2016,*
27  *LLC v. Eriks*, 2018 WL 4772085, at *6 (W.D. Wash. Oct. 3, 2018); *Redwood Prop.*
28  *Inv's II, LLC. v. Gaspar*, 2018 WL 4378756, at *1 (N.D. Cal. Feb. 5, 2018),

1  *adopting R. & R.*, 2018 WL 4378831 (N.D. Cal. Jan. 11, 2018); *Schneider v.*

2  *Roberts*, 2014 WL 1891416, at *1 (C.D. Cal. May 9, 2014).

3  **IV.    CONCLUSION**

4          For the foregoing reasons, Plaintiffs respectfully request that the Court award

5  Plaintiffs payment of attorneys' fees incurred as result of DraftKings' successive

6  improper removals, impose a pre-filing restriction, and order any other relief the

7  Court deems appropriate.[6]

8

9

10  DATED:  February 12, 2024          Respectfully submitted,

11                                     MUNGER, TOLLES & OLSON LLP

12

13

14                                     By:  _____*/s/ Brad D. Brian*_____

15                                           BRAD D. BRIAN
                                             *Attorneys for Plaintiff*

16                                           MICHAEL Z. HERMALYN

17

18                                     QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP

19

20                                     By:  ___*/s/ David C. Armillei*_____

21                                           DAVID C. ARMILLEI[7]

22                                           *Attorneys for Plaintiff*

23                                           FVP, LLC

24

25  _____
    [6] Plaintiffs reserve the right to seek attorneys' fees incurred preparing this Motion.

26  Those fees are still indeterminate, pending any reply brief and oral argument.

27  [7] Signed electronically by Brad D. Brian with the concurrence of David C. Armillei,

28  pursuant to L.R. 5-1(i)(3).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>Local Rule 11-6.1 Certificate of Compliance</u>

The undersigned, counsel of record for Michael Z. Hermalyn, certifies that this brief contains 6,991 words, which complies with the word limit of L.R. 11-6.1.

DATED:  February 12, 2024          MUNGER, TOLLES & OLSON LLP


By:  _____
          */s/ Brad D. Brian*
          BRAD D. BRIAN
          *Attorneys for Plaintiff*
          MICHAEL Z. HERMALYN