BRAD D. BRIAN (SBN 79001)
brad.brian@mto.com
BETHANY W. KRISTOVICH (SBN 241891)
bethany.kristovich@mto.com
ANNE K. CONLEY (SBN 307952)
anne.conley@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

*Attorneys for Plaintiff*
*MICHAEL Z. HERMALYN*

Michael B. Carlinsky (*pro hac vice forthcoming*)
michaelcarlinsky@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave, 22nd Floor
New York, New York 10010
Telephone:   (212) 849-7000
Facsimile:   (212) 849-7100

David C. Armillei (SBN 284267)
davidarmillei@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

*Attorneys for Plaintiff*
*FVP, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Michael Z. Hermalyn and FVP, LLC,<br><br>            Plaintiffs,<br><br>      vs.<br><br>DraftKings, Inc.,<br><br>            Defendant. | Case No. 2:24-cv-00918<br>Case No. 2:24-cv-00997<br><br>**DECLARATION OF BRAD D. BRIAN**<br><br>[*Filed concurrently with Notice of Motion and Motion for Attorneys' Fees; Armillei Declaration; Kristovich Declaration; [Proposed] Order*]<br><br>Date:         March 11, 2024<br>Time:         9:00 a.m.<br>Judge:        Hon. Mark C. Scarsi<br>Courtroom:    7C<br>Trial Date:   None Set |

## DECLARATION OF BRAD D. BRIAN

I, BRAD D. BRIAN, hereby declare, under penalty of perjury, the following:

1. I am a partner with the law firm of Munger, Tolles, & Olson LLP ("Munger"), the Chair of Munger, and one of the counsel of record in this matter for Plaintiff Michael Z. Hermalyn. I make this Declaration in support of Plaintiffs' Motion for Attorneys' Fees, filed concurrently with this Declaration. This Declaration is based on my personal knowledge and my review of Munger's business records and files kept in the normal course of business.

2. Along with my partner Bethany Kristovich, I have been responsible for overseeing the work of the team of Munger attorneys working on this matter, including the work that resulted from DraftKings' two removals of this case to federal court.

**Credentials of Munger Attorneys**

3. The Munger attorneys representing Mr. Hermalyn in this litigation are myself, Bethany W. Kristovich, Anne K. Conley, Dane P. Shikman, Richard T. Johnson, and Wesley P. DeVoll. The credentials of the Munger attorneys on this team are summarized below. More detailed biographies are attached hereto as Exhibit A.

   a. I, Brad D. Brian, am a partner in Munger's litigation practice and the Chair of the firm. I have decades of experience representing clients in complex commercial litigation matters. I am a Fellow in the American College of Trial Lawyers and the International Academy of Trial Lawyers. I have been recognized by both Chambers USA and Chambers Global as one of the top trial lawyers globally, having been ranked in Band 1 in both categories, and I am one of only three individuals in California currently designated as a "Star Individual" by Chambers in the category of General Commercial Litigation. For more than 20 consecutive years, I have been ranked by the *Daily Journal*,

|  |  |
|---|---|
| 1 | California's leading legal publication, as one of the Top 100 Lawyers |
| 2 | in the State of California, *Lawdragon* named me on its list of "500 |
| 3 | Leading Lawyers in America" every year from 2005-2018 and 2020- |
| 4 | 2021 and its list of "500 Leading Litigators in America" in 2022-2024; |
| 5 | inducted me into the *Lawdragon* Hall of Fame in 2022; and named me |
| 6 | a *Lawdragon* Legend in 2015. In 2016 and 2023, the *Los Angeles* |
| 7 | *Business Journal* named me one of the "Top 500 Most Influential |
| 8 | People in Los Angeles." Throughout my career, I have represented |
| 9 | numerous *Fortune* 500 companies in their most challenging, high- |
| 10 | profile lawsuits and government investigations. Before joining |
| 11 | Munger, I served as an assistant U.S. Attorney in Los Angeles. I |
| 12 | graduated *magna cum laude* from Harvard Law School and served as a |
| 13 | law clerk on the Third Circuit. |

b. Bethany W. Kristovich is a partner in Munger's litigation practice, where she has almost two decades of experience representing clients in complex civil litigation matters. She has represented some of the nation's largest companies, law firms, and private equity firms in their most sensitive matters. This year, *Lawdragon* recognized Ms. Kristovich in its 500 Leading Litigators in America list for complex civil litigation and class actions. She has received several accolades from the *Daily Journal*, including Leading Commercial Litigator and the Top 100 Lawyers in California for her work involving bet-the-company litigation. Before joining the firm, Ms. Kristovich served as a law clerk on the Central District of California. She graduated from USC Gould School of Law, Order of the Coif.

c. Anne K. Conley is an associate in Munger's litigation practice and has been practicing law for almost ten years. Her practice focuses on complex civil litigation, particularly in the media, entertainment, and

|   |   |   |
|---|---|---|
| 1 |  | technology industries. She was recognized in this year's Best Lawyers |
| 2 |  | "Ones to Watch" list for commercial litigation, and in 2020, she |
| 3 |  | received the Southern California ACLU's Criminal Justice Award. Ms. |
| 4 |  | Conley graduated *summa cum laude* from the UC Irvine School of Law |
| 5 |  | and joined the firm in 2017 after serving as a law clerk on the Ninth |
| 6 |  | Circuit and the Central District of California. |
| 7 | d. | Dane P. Shikman is an associate in Munger's litigation practice. Mr. |
| 8 |  | Shikman maintains a diverse practice focusing on complex civil |
| 9 |  | litigation, jury trials, and appeals, across numerous subject areas. He |
| 10 |  | has argued and won favorable results for clients in state and federal |
| 11 |  | trial courts and on appeal, including in a precedent-setting decision in |
| 12 |  | the California Supreme Court. Mr. Shikman graduated from The |
| 13 |  | George Washington University School of Law, Order of the Coif, and |
| 14 |  | joined the firm in 2017 after serving as a law clerk on the Tenth Circuit. |
| 15 | e. | Richard T. Johnson is an associate in Munger's litigation practice. He |
| 16 |  | graduated from U.C. Berkeley School of Law in 2017, Order of the |
| 17 |  | Coif. He then spent one year at a major international law firm before |
| 18 |  | serving as a law clerk on the Ninth Circuit and the Northern District of |
| 19 |  | California. Following his clerkships, Mr. John served as a Munger, |
| 20 |  | Tolles & Olson Fellow for the Lawyers' Committee for Civil Rights |
| 21 |  | Under Law and then joined the firm full time in 2021. |
| 22 | f. | Wesley P. DeVoll is an associate in Munger's litigation practice. He |
| 23 |  | graduated from Stanford Law School in 2021. At Stanford, Mr. DeVoll |
| 24 |  | received the Judge Thelton E. Henderson Prize for his outstanding |
| 25 |  | work in Stanford's Supreme Court Litigation Clinic, and was awarded |
| 26 |  | class prizes in numerous other subjects. He joined the firm in 2023 |
| 27 |  | after serving as a law clerk on the Ninth Circuit and the Supreme Court |
| 28 |  | of California. |

**Reasonableness of Time Spent and Expenses Incurred**

4. I am familiar with the usual business practice of the attorneys employed by Munger with respect to memorializing the services performed on behalf of the firm's clients. It is the custom and practice of Munger's attorneys, as part of their regular business activity and in the regular course of Munger's business, to record at or near the time that work is performed a description of the work they perform for a client and the amount of time spent doing so. It is also the custom and practice of Munger to compile and store all such data electronically to permit the creation of a summary of their time and work.

5. Under my direction and supervision, a Munger attorney on this team used the information from those records to prepare the summary tables attached to the Motion and attached to this Declaration as Exhibit B. I directed that the hours expended as a result of DraftKings's removals to the United States District Court be calculated using the following method. Where hours were specifically recorded for work directly related to the removals—for example, for work on the remand motions, the ex parte applications related to those motions, reply briefs, and preparation for a potential oral argument in federal court—I directed that those hours should be included. Where work tasks were recorded together with other tasks that were not directly related to the removals—for example, for work revising and resubmitting the state court papers—I instructed the attorney who recorded those hours to make a conservative estimate (*i.e.*, in DraftKings' favor) of how many hours were expended on work solely related to the removals. I instructed that those hours should be included and all other time excluded from the calculation.

6. After the Munger attorney on this team performed the calculations and produced the summary tables attached to the Motion and attached to this Declaration as Exhibit B, I reviewed the work product and confirmed that the calculations were made in accordance with my instructions described above. With the methodology we used, I believe that Exhibit B fairly and conservatively reflects the hours

expended by each member of the Munger team (except for my time, which I have excluded) as a result of DraftKings' first and second removals of this case to federal court. To the best of my knowledge, all information reflected in Exhibit B is accurate, and the fees represented in Exhibit B will be charged for our legal representation of Mr. Hermalyn.

7. As set forth in this Declaration and in the Motion, the fees charged in this matter reflect necessary and reasonable billing for fully litigating a contentious jurisdictional dispute on an extremely compressed timeline, against a defendant who refused to stipulate to a remand despite being informed following each removal that it had no legal or factual basis for invoking federal jurisdiction. Plaintiffs' response was complicated and made more difficult by the fact that DraftKings removed in the middle of the night before Mr. Hermalyn expected to be heard in state court on his ex parte application for emergency relief there. Plaintiffs were required to figure out the fastest possible procedure to obtain relief in the federal court and to research and draft additional papers beyond what would be necessary for an ordinary motion to remand—for example, the ex parte applications to shorten time—to attempt to obtain that relief. The fees also reflect the need to ensure coordination and alignment between separately represented Plaintiffs.

8. The hours expended as a result of DraftKings' <u>first removal</u> reflect the following categories of tasks, all of which were directly related to DraftKings' efforts to remove the case:

    a. reviewing the First Notice of Removal and supporting documents;

    b. meet-and-confer correspondence explaining to DraftKings why removal was improper and attempting to obtain a stipulation to a remand;

    c. preparing case-initiating documents, such as the notice of interested parties, that are required in federal court;

    d. researching, drafting, and filing the ex parte application to shorten time;

e. researching, drafting, and filing the motion for remand;

f. preparing for a potential argument on the ex parte application and/or motion to remand;

g. researching and drafting a reply brief that was not filed before the Court issued its remand order; and

h. internal correspondence and conferences regarding the strategy and substance of this response.

9. Based on my personal knowledge and my review of the billing records, the contributions of each of the Munger Attorneys on this team to the tasks listed above can be summarized as follows:

a. **Time billed by Brad D. Brian.** After DraftKings removed the case, I reviewed the removal papers and corresponded by telephone and email with Ms. Kristovich, others on the Munger team, and counsel for co-Plaintiff Fanatics VIP about our response. I reviewed and made edits to at least some of the drafts of the filings mentioned above and engaged in additional correspondence with the team regarding the filing plan and communications with opposing counsel.

b. **Time billed by Bethany W. Kristovich.** Ms. Kristovich reviewed the removal papers and corresponded by telephone and email with me and with counsel for co-Plaintiff Fanatics VIP about our case strategy and response to DraftKings' removals. She also reviewed and edited drafts of all the filings mentioned above. Ms. Kristovich was also responsible for meeting and conferring with opposing counsel and for providing the required notice to them in advance of our filings.

c. **Time billed by Anne K. Conley.** As the most senior associate assigned to the case, Ms. Conley was responsible for coordinating and supervising the work of the rest of the team. She also assumed primary research and drafting responsibility for the First Motion to Remand and

for the reply brief in support of the First Ex Parte Application, although that brief was ultimately not filed.  Ms. Conley's role required extensive communication with me, Ms. Kristovich, and with counsel for co-Plaintiffs to ensure that all views were incorporated and reflected in the numerous documents prepared for filing.  Finally, Ms. Conley was responsible for coordinating the logistics of getting all documents on file with the court and notice provided to opposing counsel.

  d. **Time billed by Dane P. Shikman.**  Mr. Shikman assisted with researching regarding the removal and Plaintiffs' remand strategy and also research issued related to pursuing substantive relief in federal court in the event the remand was denied.

  e. **Time billed by Richard T. Johnson.**  Mr. Johnson assisted with the research and drafting of the First Motion to Remand.  He was also the team member with primary responsibility for researching and understanding the federal court procedures for seeking relief on an expedited basis and other procedural matters.  Mr. Johnson was responsible for drafting the corporate disclosure statement required to be filed in federal court, which included extensive correspondence with counsel for co-Plaintiff Fanatics VIP to obtain the information necessary to prepare that document.

  f. **Time billed by Wesley P. DeVoll.**  Mr. DeVoll worked with Ms. Kristovich on the research and drafting of the First Ex Parte Application to Shorten Time and the supporting declaration.  He drafted an oral argument outline in preparation for a potential hearing on the First Ex Parte Application and First Motion to Remand.  He also assisted with research and drafting of the reply brief in support of the First Ex Parte Application and the supporting declaration, although the reply brief was ultimately not filed in light of the court's remand order.

10. The hours expended as a result of DraftKings' <u>second removal</u> reflect the following categories of tasks, all of which were directly related to DraftKings' efforts to remove the case a second time:

    a. reviewing the Second Notice of Removal and supporting documents;

    b. preparing the Notice of Related Case to inform the Court—as DraftKings failed to do—that the identical case had been removed again, the same day it had just been remanded;

    c. researching, drafting, and filing a second ex parte application to shorten time, this time under the emergency rules;

    d. researching, drafting, and filing the second motion for remand, this time addressing DraftKings' new baseless but complicated legal theory;

    e. reviewing DraftKings' opposition to the remand motion, and researching, drafting, and filing a reply;

    f. reviewing DraftKings' supplemental opposition to the remand motion, and researching, drafting, and filing a reply;

    g. preparing for a second potential argument on the ex parte application and/or motion to remand; and

    h. internal correspondence and conferences regarding the strategy and substance of this response.

11. Based on my personal knowledge and my review of the billing records, the contributions of each of the Munger Attorneys on this team to the tasks listed above can be summarized as follows:

    a. **Time billed by Brad D. Brian.** After DraftKings removed the case for a second time, I reviewed the removal papers and corresponded by email with attorneys on the Munger team and counsel for co-Plaintiff about our response. I also reviewed and edited some of the filings mentioned above.

b. **Time billed by Bethany W. Kristovich.** Ms. Kristovich similarly reviewed the removal papers and corresponded by telephone and email with me and with counsel for co-Plaintiff Fanatics VIP about our response. She also reviewed and edited drafts of all the filings mentioned above. Ms. Kristovich continue to be responsible for meeting and conferring with opposing counsel and for providing the required notice to them in advance of our filings.

c. **Time billed by Anne K. Conley.** As with the first remand, Ms. Conley was responsible for coordinating and supervising the team's response to DraftKings' second removal. She assumed primary research and drafting responsibility for the Notice of Related Case, which contained a substantive argument section, and the Second Ex Parte Application, Reply, and Reply to the Supplemental Opposition. She also performed research regarding emergency relief and case-opening mechanisms in order to swiftly obtain judicial relief. Ms. Conley's role again required extensive communication with me, Ms. Kristovich, and with counsel for co-Plaintiffs to ensure that all views were incorporated and reflected in the numerous documents prepared for filing. Finally, Ms. Conley was responsible for coordinating the logistics of getting all documents on file with the court and providing notice to opposing counsel.

d. **Time billed by Dane P. Shikman.** Mr. Shikman assumed primary responsibility for researching and drafting the Second Motion to Remand and also assisted in the research and drafting of the Reply.

e. **Time billed by Richard T. Johnson.** Mr. Johnson assisted with the research and drafting of all filings related to the second removal. Mr. Johnson also researched procedural and substantive issues related to

      f.    **Time billed by Wesley P. DeVoll.** Mr. DeVoll assisted in the research, drafting, and preparing of the Second Ex Parte Application to Shorten Time and the Reply. He revised the oral argument outline that was prepared following the first removal to address the evolving procedural history of the case and the new arguments raised by DraftKings' Second Notice of Removal. He also assisted with research related to pursuing substantive relief in federal court in the event that the case was not remanded to the state court.

12. In the paragraphs above, I have included narrative descriptions of the work that I personally performed related to DraftKings' removals for the sake of completeness. However, in the interest of ensuring that this fee request represents a conservative estimate (*i.e.*, in DraftKings' favor) of the attorneys' fees incurred as a result of the removals, I have elected to exclude the time that I recorded in this matter from the fee calculations reflected in the summary tables attached to the Motion and attached to this Declaration as Exhibit B.

**Reasonableness of Billing Rates**

13. As is typical in the legal industry, Munger has a general practice of adjusting its standard hourly rates each year, taking into account a variety of factors including available market data concerning benchmark rates charged by our peer firms.

14. The hourly rates for each Munger letterhead attorney for whom fees are being sought are as follows:

      a.    Ms. Kristovich's hourly rate is $1725 per hour.

      b.    Ms. Conley's hourly rate is $1300 per hour.

      c.    Mr. Shikman's hourly rate is $1280 per hour.

      d.    Mr. Johnson's hourly rate is $1225 per hour.

  e. Mr. DeVoll's hourly rate is $1020 per hour.

15. These rates are slightly discounted off our current (effective January 1, 2024) standard rates for new clients. I chose to use these rates (as opposed to lower or more discounted rates we offer existing clients) both because Michael Hermalyn is a new client and because I anticipated this case would require a very substantial commitment over a relatively short period of time. Based on my review of fee applications and other market data I have reviewed, I believe the foregoing rates are comparable to the fees charged by other legal practitioners in federal court in Los Angeles with similar experience, ability, and reputation for work on similar matters.

16. While Ms. Kristovich's rates is higher than the hourly rates of the associate attorneys on the team, Ms. Kristovich's time accounts for a smaller portion—approximately 10%--of the total Munger attorney hours for which Plaintiffs are seeking fees. Dividing the total fees sought for Munger's legal services in connection with both removals by the total number of hours expended by Munger attorneys as a result of those removals yields a weighted average billing rate of approximately $1270 per hour.

17. For the foregoing reasons and those set forth in the accompanying Motion, Plaintiff Michael Z. Hermalyn requests an award of attorneys' fees for the fees spent on legal services provided by Munger totaling $275,961, which reflects approximately 217 hours of attorney time incurred as a result of DraftKings' removals. This figure consists of $165,106 in fees based on approximately 129 attorney hours related to DraftKings' first removal; and $110,855 in fees based on approximately 88 attorney hours related to DraftKings' second removal.

18. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed February 12, 2024, in Los Angeles, California.

By: _____
Brad D. Brian